Filed 6/2/08    NO. 4-07-0250

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: the Marriage of | ) | Appeal from |
| JEROME B. O'DANIEL, JR., | ) | Circuit Court of |
|     Petitioner-Appellee, | ) | Sangamon County |
|     and | ) | No. 94D397 |
| SUSAN B. O'DANIEL, | ) | |
|     Respondent-Appellant. | ) | Honorable |
| | ) | Steven H. Nardulli, |
| | ) | Judge Presiding. |

_____

JUSTICE McCULLOUGH delivered the opinion of the court:

In September 2006, the trial court issued a postjudgment order modifying terms of the April 1995 judgment dissolving the marriage of Jerome and Susan O'Daniel.  In February 2007, after both Jerome and Susan filed motions to reconsider the court's September 2006 order, the court filed another postjudgment order.  Susan appeals both the September 2006 and February 2007 postjudgment orders, arguing the court erred (1) in calculating the child support due from Jerome, (2) in failing to hold Jerome in contempt for failing to maintain health insurance for their children, and (3) in not ordering Jerome to pay enough of Susan's attorney fees.  We affirm.

As the parties are aware of the facts in this case, we only briefly discuss those facts relevant to the issues Susan raises.  On June 1, 2005, Jerome filed a petition to modify judgment, alleging (1) the custodial circumstances of his and

Susan's four children had changed and that (2) he had been laid off from his employment with Levi, Ray & Shoup. Over the next month and a half, Susan filed two petitions for rule to show cause, alleging Jerome had failed (1) to provide income-tax information as required by the judgment, (2) to pay 75% of the children's medical and dental expenses not covered by insurance, and (3) to provide medical insurance as required by the judgment. On October 7, 2005, Susan filed a petition to modify the judgment, seeking (1) modification of (a) child support and (b) the allocation of dependency exemptions and (2) proof of life insurance.

On July 6, 2005, Jerome obtained employment with CDS Office Technologies (CDS), where he earned a monthly salary of $4,166.66 plus commissions. He lost that job on November 8, 2005. He again received unemployment. In April 2006, Jerome began working for Professional Liability Management.

In his September 2006 written trial brief, Jerome argued the trial court should take into account his periods of unemployment when setting child support and submitted child support be set in the amount of (1) $600 per month for the periods from June 15, 2005, through December 31, 2005, (2) $400 per month for the period from January 1, 2006, through June 30, 2006, and (3) $600 per month thereafter. He argued the money he withdrew from his individual retirement account (IRA) in 2005 and

2006 should not count as income for purposes of determining the amount of child support he owed because he used that money "to meet his mortgage and other expenses, to pay the [COBRA (Consolidated Omnibus Budget Reconciliation Act)] cost of insurance, and [to] make some child[-]support payments during time he was on unemployment." According to Jerome's argument, "The funds that [he] had in his IRA were, just like any savings or bank account, already accumulated funds." He also argued any money he earned from a rental property he owned with Bob Shaver went to Shaver because Shaver advanced Jerome's share of the purchase price of the property. According to Jerome's trial brief, "For support purposes the rental property is a wash, where the income received is used to pay the debt created to secure the income."

In her September 2006 written argument to the trial court, Susan argued the money Jerome withdrew from his IRA ($43,000) and half of the rental income earned from the rental property ($739) in 2005 should count as income for determining child support. According to Susan's argument, Jerome's child support for 2005 should have been set at $2,067.40 per month for the period between June 1 and December 31. As for 2006, Susan argued the court should include the following in Jerome's projected gross income: (1) rental income of $8,340 (2) $57,666.10 in withdrawals from his IRA (Jerome had withdrawn $28,864.72 and anticipated withdrawing the rest), (3) $7,600 in unemployment

- 3 -

income, and (4)$33,332 in projected income for the period May through December 2006 from his employment with Professional Liability Management.

Susan stated the trial court should deduct estimated health-insurance premiums of $8,064 ($672 per month) in determining child support. Susan noted her and Jerome's second oldest child attained her majority on June 3, 2006, when she graduated from high school. As a result, Susan argued the court should find Jerome owed child support of $1,964 per month for the first five months of 2006 and $1,718 per month thereafter.

In its September 2006 order, the trial court declined Susan's request to include the IRA withdrawals Jerome made while he was unemployed for purposes of determining child support. The court also declined to include any income from the rental property in which Jerome had a partial ownership interest. The court set child support at $973 per month for the couple's three children who had not reached majority for the period between June 1 and October 31, 2005. The court based this figure on the fact Jerome's net income before paying child support was $3,039 per month while he was working at CDS. However, Jerome was not working for CDS during the month of June 2005, as he was unemployed. For the period between November 1, 2005, and May 31, 2006, the court set child support at $791 per month for three children based on Jerome's net income of $2,472.42 per month at

Professional Liability Management after deducting $720 per month for the cost of medical insurance for the children through COBRA obtained from CDS. The court did this even though Jerome did not begin working at Professional Liability Management until April 2006 and was unemployed during a significant portion of this period of time. Effective June 1, 2006, the court lowered the child support to $692 per month because only two of the children had not reached the age of majority.

The trial court also ordered Jerome to continue to provide the children with medical insurance as long as it was available to him. When it was no longer available, Jerome and Susan were to split the cost of medical insurance for the children. The court also ruled that the parties were to split equally the out-of-pocket medical expenses for the children.

The trial court further found Jerome's failure to provide medical insurance for the children during certain periods of his unemployment was not willful given Jerome's financial condition at the time. The court did find Jerome in willful contempt for failing to pay his share of medical expenses as ordered by the court. The court also ordered Jerome to pay $900 of Susan's attorney fees that it found were "reasonably incurred by Susan relative to her enforcement of the orders with regard to production of income[-]tax information, life[-]insurance informa- tion, and the payment of medical expenses not otherwise covered

by medical insurance."

In October 2006, Susan filed a motion to reconsider the trial court's postjudgment order, in which she argued the points she raises on appeal.

In February 2007, the trial court filed another postjudgment order. In that order, the court found once again that the withdrawals Jerome made from his IRA should not be included in his gross income when calculating child support. The court continued to deny Susan's efforts to have Jerome held in contempt for failing to maintain medical insurance while he was unemployed. The court also denied Susan's request for additional attorney's fees.

Jerome has not filed an appellee's brief. We nevertheless still choose to review this case on its merits. Our supreme court has stated:

> "[T]he judgment of a trial court should not
> be reversed pro forma for the appellee's
> failure to file its brief as required by
> rule. A considered judgment of the trial
> court should not be set aside without some
> consideration of the merits of the appeal.
>
> * * *
>
> We do not feel that a court of review
> should be compelled to serve as an advocate

for the appellee or that it should be required to search the record for the purpose of sustaining the judgment of the trial court. It may, however, if justice requires, do so. Also, it seems that if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal. In other cases if the appellant's brief demonstrates prima facie reversible error and the contentions of the brief find support in the record the judgment of the trial court may be reversed." First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128, 131-33, 345 N.E.2d 493, 494-95 (1976).

Susan first argues the trial court erred in failing to properly calculate the child support due from Jerome. We do not disturb a trial court's decision to modify child support unless we find the court abused its discretion. Posey v. Tate, 275 Ill. App. 3d 822, 825, 656 N.E.2d 222, 224 (1995). An abuse of discretion occurs only where no reasonable person would take the view adopted by the court. Posey, 275 Ill. App. 3d at 825, 656

N.E.2d at 224. Susan argues the court abused its discretion because it ignored substantial sums of income earned by Jerome in 2005 and 2006, resulting in a support award less than required by law.

According to Susan, the trial court should have included the withdrawals Jerome made from his IRA in determining his income. Susan relies on the Second District's decision in In re Marriage of Lindman, 356 Ill. App. 3d 462, 824 N.E.2d 1219 (2005), for this proposition. In Lindman, the Second District held that "IRA disbursements are 'income' for purposes of calculating 'net income' under section 505 of the [Illinois Marriage and Dissolution of Marriage Act (Act)] (750 ILCS 5/505 (West 2002))." Lindman, 356 Ill. App. 3d at 466-67, 824 N.E.2d at 1223.

The Second District reached this result by relying on the supreme court's decision in In re Marriage of Rogers, 213 Ill. 2d 129, 820 N.E.2d 386 (2004). The Lindman court stated:

> "The supreme court has counseled that, consistent with its ordinary meaning, 'income' is '"something that comes in as an increment or addition ***: a gain *** that is usu[ally] measured in money.'" Rogers, 213 Ill. 2d at 136,[ 820 N.E.2d at 390,] quoting Webster's Third New International Dictionary 1143

(1986). Additionally, 'income' may be defined as the money or payment received from a variety of sources, including investments. Rogers, 213 Ill. 2d at 137[, 820 N.E.2d at 390], quoting Black's Law Dictionary 778 (8th ed. 2004).

***

*** Like all of these items, IRA disbursements are a gain that may be measured in monetary form. Rogers, 213 Ill. 2d at 136[-37, 820 N.E.2d at 390]. Moreover, IRA disbursements are monies received from an investment, that is, an investment in an IRA. *** Thus, given its plain and ordinary meaning, 'income' includes IRA disbursements." Lindman, 356 Ill. App. 3d at 466, 824 N.E.2d at 1223.

It would appear from the above quote that the Second District would find that any IRA disbursement would constitute income. We disagree and do not find Rogers supports this proposition. The Second District's decision does not adequately take into account that IRAs are ordinarily self-funded by the individual possessing the retirement account. Except for the tax benefits a person gets from an IRA and the penalties he or she

- 9 -

will incur if he or she withdraws the money early, an IRA basically is no different than a savings account, although the risks may differ. The money the individual places in an IRA already belongs to that individual. When an individual withdraws money he placed into an IRA, he does not gain anything as the money was already his. Therefore, it is not a gain and not income. The only portion of the IRA that would constitute a gain for the individual would be the interest and/or appreciation earnings from the IRA.

Susan does not state in her brief what portion of Jerome's IRA was made up of his contributions. As a result, we cannot say what portion of Jerome's withdrawals might have constituted income for child-support purposes.

Susan also argues the trial court erred in failing to include income from Jerome's rental property. The court did not specify in its postjudgment order why it was not including the rental income. However, in the trial court, Jerome argued the money he earned from the rental property went to the other individual, Bob Shaver, who owned the property with him because Shaver advanced Jerome's share of the purchase price of the property. Jerome argued this income would fall under section 505(3)(h) of the Act (750 ILCS 5/505(3)(h) (West 2006)) because the income received was used to pay the debt created to secure the income. The trial court evidently agreed. Susan does not

give us any indication in her brief why the trial court would have erred in doing so.

Susan also argues the trial court erred in not considering Jerome's unemployment compensation. While it is true that at least one court has considered unemployment checks income (see In re Marriage of Olsen, 229 Ill. App. 3d 107, 117, 593 N.E.2d 859, 867 (1992)), the trial court in this case did not abuse its discretion in favor of Jerome in not considering those payments because it ordered him to pay child support during his periods of unemployment based on his net income while he was employed. The court set Jerome's child support at $973 per month for the period between June 1 and October 31, 2005, based on his net income per month at CDS, even though he was unemployed between June 1 and his start date at CDS, which was July 6, 2005. Further, the court ordered Jerome to pay $791 per month, based on his net monthly income at Professional Liability Management, for the period between November 1, 2005, and May 31, 2006, even though he did not begin working at Professional Liability Management until April 2006 and was unemployed during a large part of the period between November 1, 2005, and April 1, 2006.

Susan also argues the trial court erred in assuming Jerome would be paying $720 per month for medical insurance through COBRA for the 18-month period after November 1, 2005. We disagree. Based on a check Jerome wrote for $2,688 for four

- 11 -

months of premiums, Susan argues he is only paying $672 per month for health-insurance premiums.  However, Susan does not point this court to anything more definitive than this check and asks this court to speculate that he was paying the same premium for all four months. From respondent's exhibit No. 35 contained in the record, which was the information CDS sent to Jerome about continuing his medical coverage after he lost his employment, it is quite clear Jerome's monthly premium was scheduled to be $720. From that exhibit, it appears his premium for November 2005 was probably prorated because he was not terminated from CDS until November 8.  According to the exhibit:

> "As explained in the first few pages of this
> communication, your first premium payment
> must cover the period beginning on the date
> immediately following the date of your
> qualifying event.  Please complete sign and
> date the Election/Enrollment Form and return
> it to this office.  We will then notify you
> of the amount of your initial premium
> payment."

Based on the arguments made by Susan, we do not believe the trial court abused its discretion in the way it set Jerome's child-support obligations.

Susan next argues the trial court erred in failing to

hold Jerome in contempt of court for his failure to maintain health insurance for the children. In its September 2006 postjudgment order, the trial court found Jerome's "failure to provide medical insurance for any period of time was not willful given Jerome's financial circumstances at the time." The court did find Jerome in willful contempt for failing to pay his share of the children's medical expenses as ordered by the court. Susan cites no case law in support of her argument. She does concede this was a discretion call for the court. We do not find the trial court abused its discretion.

Susan next argues the trial court erred in the amount it awarded her for her attorney fees. An appellate court reviews the amount a trial court awards in attorney fees under an abuse-of-discretion standard. In re Marriage of Powers, 252 Ill. App. 3d 506, 508-09, 624 N.E.2d 390, 392-93 (1993). We do not find the trial court abused its discretion in the amount of attorney fees it awarded.

Affirmed.

KNECHT and COOK, JJ., concur.