*In re* MARRIAGE OF MICHAEL ANDERSON, Petitioner-Appellee, and MOLLY A. MURPHY, f/k/a Molly A. Anderson, Respondent-Appellant.

Third District    No. 3—09—0829

Modified opinion filed on denial of rehearing November 15, 2010.

1130

McDADE, J., concurring in part and dissenting in part.

Jeffrey Alan Ryva (argued), of Husch Blackwell LLP, of Peoria, for appellant.

Jonathan J. Heiple (argued), of Heiple Law Offices, and Maribeth Egert Dura, of Dura Law Office, both of Peoria, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

Respondent Molly Murphy, f/k/a Molly A. Anderson, appeals from the postjudgment order resolving all pending issues and dissolving her marriage to petitioner, Michael Anderson. On appeal, Molly argues that the trial court erred in (1) calculating net income for purposes of child support, (2) terminating maintenance, (3) awarding attorney fees, (4) altering the percentage of responsibility for the children's medical expenses, (5) denying her motion to return personal property, (6) relieving Michael of his duty to file amended tax returns, and (7) modifying Michael's previously imposed financial reporting requirements. We affirm in part, remand in part, reverse and remand in part, and vacate and remand in part.

Michael Anderson and Molly Murphy were married in January of 1993. Molly gave birth to twin daughters, Janelle and Kaleigh, on December 27, 1994.

During the marriage, Michael, who has a master's degree from the University of Illinois, worked in the financial industry. In 1998, he was employed by Komatsu and earned a gross income of $61,573. He also received a yearly dividend from stock he owned in his family's closely held corporation, AEC Holding Company.

Molly was diagnosed with fibromyalgia in 1990 and was employed by Caterpillar. After she married Michael, she continued to work for Caterpillar until the birth of the twins. Shortly thereafter, she returned to work. In December of 1995, she was placed on disability due to her illness. At that time, she was earning $52,000 per year, plus incentives. Molly currently receives a disability payment from Caterpillar, as well as social security benefits.

Michael petitioned for dissolution of the marriage in July 2001. On February 13, 2002, an agreed order was entered awarding custody of the girls to Molly. On August 25, 2004, a judgment of dissolution of marriage was entered dissolving the marriage and incorporating a stipulated visitation order. Under the terms of the stipulation, Michael had visitation with the twins every other weekend, every Wednesday evening and alternating holidays.

On September 2, 2004, the trial court entered a supplemental judgment that addressed the marital property issues but reserved determinations of child support and maintenance. According to the terms of the supplemental judgment, the trial court awarded Mike his AEC stock as nonmarital property for purposes of maintenance and directed him to provide Molly with copies of his income tax returns, including any attached schedules, W-2 forms and 1099 forms. For the children's medical expenses, Michael was responsible for 60% of the expenses not covered by insurance and Molly was responsible for 40%. Marital investments were divided equally between the parties, and the marital residence was transferred to Molly in exchange for a $40,000 payment to Michael. Michael was also ordered to inform Molly of any dividends he received from his shares of AEC stock and pay 28% of his net dividends as child support.

In December 2006, the trial court entered an order establishing that Michael would pay the sum of $900 per month in reviewable maintenance and that he would pay 28% of his statutory net income for child support. At that time, Michael was employed by Nextel, earning a salary of approximately $50,000 per year.

During the next two years, the parties filed numerous petitions for rules to show cause and motions to modify the terms of previous

orders. In addition to the petitions, Molly filed a "Motion for Return of Children's Property." The motion alleged that the girls had taken personal property to Michael's residence during their visits and that Michael refused to return the items. The list of property included American Girl dolls, American Girl accessories, Disney DVDs, board games, a basketball hoop and clothing.

In September 2008, Michael filed a motion for review of Molly's $900 monthly maintenance award, as well as a petition to modify the medical expense allocation. In response, Molly filed a petition to modify child support and maintenance, seeking an increase in both based on Michael's new position with Habegger Corporation, in which he earned approximately $62,500 per year.

The motions and petitions were consolidated, and the trial court conducted hearings for several days. Michael testified that his shares of AEC stock had been purchased by the company as part of a reverse stock split in an attempt to reduce the number of outstanding shares. The reverse split affected all 11 shareholders. Those five shareholders who owned less than 5% of the company's outstanding shares were required to cash out their holdings based on a fair market valuation. The company forced Michael to sell all of his shares of stock because he owned only 2.16%. The reverse stock split went into effect on December 31, 2008. He received $192,780 as a result of the split and would no longer receive AEC dividends.

Testimony and exhibits established that the income generated by Michael's shares of AEC stock had been substantial. In 2005, he received dividend income in the amount of $171,760; in 2006, he received $197,887; and in 2007, he received $190,845. The call of the shares by the company resulted in Michael sustaining a capital loss of $65,743. Michael testified that he used the proceeds from the sale of the stock to purchase gold coins.

Michael further testified that most of the items listed in Molly's motion to return the children's property were items he had purchased for the girls or gifts they had received from his parents. He never refused to return things the children brought with them to his house. He stated that he packed all of the girls' belongings up and gave them to Goodwill because he had not had visitation with them for at least three years.

Molly testified that her medical condition and financial situation have not changed since 1995. She and the girls have been receiving social security benefits since 1996 due to her illness. She testified that she handles all transportation and scheduling for the children. At the time of the hearing, Michael had not seen the girls or exercised his visitation for almost three years. The trial court found that Michael

had violated numerous court orders, but reserved the issue of attorney fees.

In a later petition before the court, Molly again sought attorney fees for the legal expenses she incurred. In support, she submitted affidavits from four attorneys who represented her during the divorce proceedings. Molly claimed that she incurred $74,547 in fees seeking to enforce previous court orders and responding to Michael's motion to terminate maintenance.

Both parties filed financial affidavits in addition to their testimony. Michael's affidavit, dated December 1, 2008, indicated that he was a territory manager for Habegger, earning a monthly salary of $5,100. Minus deductions for state and federal taxes, social security and child support, Michael reported a net monthly earned income of $1,510. He also reported dividend income of $1,966 from his AEC stock, for a total income of $3,476. His monthly expenses totaled $3,673. Michael listed $314,578 in nonmarital assets and $43,470 in nonmarital debt. He also stated that he had $22,024 in marital assets and no marital debt.

Molly's 2008 financial affidavit reported a net earned income of $3,356 per month, plus additional monthly income from maintenance and child support, for a total income of $7,024 per month. Molly stated that she had monthly household expenses totaling $4,034 and medical expenses equivalent to $772. Her total monthly expenses for the house, the children and her equaled $8,279. She listed her nonmarital assets at a value of more than $676,500 and her nonmarital debt as $161,725. The affidavit further stated that she had $42,000 in marital assets and no marital debt.

The trial court issued a written order addressing all postdissolution motions. In its order, the court noted that the parties had not communicated effectively to resolve any issues and had not made good-faith efforts to comply with court orders. It ordered Michael to pay $31,892.88 for past child support and maintenance. Regarding income tax returns, the court stated that Michael had not filed the amended returns he was instructed to file for improperly claiming Kaleigh as a dependent when he failed to pay child support. To remedy the disadvantage to Molly, the court directed that Molly be allowed to claim both children as exemptions on her income tax returns until the girls turned 18 or completed high school. The court also modified Michael's financial reporting obligation to require him to provide Molly with a copy of his W-2 forms each April and to inform Molly of any changes in his employment.

The trial court declined to treat the sale of Michael's AEC stock as income, concluding that the stock was nonmarital property and that

Michael had no control over the sale of the stock. Since Michael was no longer receiving AEC dividends, the circuit court found a substantial change in circumstances had occurred and modified child support to the statutory percentage of Michael's current net income from his full-time employment, ordering him to pay $528.53 every two weeks. The trial court also refused Molly's request to require Michael to pay child support based upon any gifts he may receive from his family.

Further, the trial court modified the children's uncovered medical expense payment ratio to an equal 50% for both parties. The court also denied Molly's request for the return of various toys and games that the girls kept at Michael's house, finding that most of the items were gifts from Michael or his parents.

On the issue of maintenance, the trial court found that the stock sale dramatically reduced Michael's income and terminated maintenance effective June 1, 2009. Last, the trial court ordered Michael to pay $25,000 of Molly's attorney fees.

## ANALYSIS

### I

Molly argues that the trial court erred as a matter of law in determining Michael's net income for purposes of child support under section 505(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/505(a)(3) (West 2008)). Specifically, she claims that the trial court erred by ignoring three sources of income: (1) the proceeds from the sale of the AEC stock; (2) bonus/commission income from his new employer; and (3) gifts and loans that Michael may receive from his parents.

Generally, the trial court's net income determination and child support award lie within its discretion. *In re Marriage of Deem*, 328 Ill. App. 3d 453 (2002). However, Molly challenges the court's interpretation of section 505(a)(3) of the Dissolution Act. The interpretation of a statute is not a matter left to the trial court's discretion; it presents a question of law that we review *de novo*. *Einstein v. Nijim*, 358 Ill. App. 3d 263 (2005).

The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent. The best indicator of legislative intent is the plain and ordinary language of the statute itself. *People v. Pack*, 224 Ill. 2d 144 (2007). Where the statutory language is clear, it must be given effect without resort to extrinsic aids of interpretation. *In re Marriage of Rogers*, 213 Ill. 2d 129 (2004). Legislative intent can be ascertained from consideration of the entire statute, its nature and objective, and the consequences that would result from construing it

one way or the other. *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54 (1990).

## A. AEC Reverse Stock Split

Molly first claims that the reverse stock split proceeds Michael received should be treated as income subject to child support.

Section 505(a)(3) of the Dissolution Act defines net income as "the total of all income from all sources," minus several enumerated deductions. The statute does not define "income" for purposes of determining child support. In such cases, courts give undefined words their plain and ordinary meaning. See *In re Estate of Poole*, 207 Ill. 2d 393 (2003).

In *Rogers*, the supreme court discussed the plain and ordinary meaning of the term "income":

> "As the word itself suggests, 'income' is simply 'something that comes in as an increment or addition \*\*\*: a gain or recurrent benefit that is usu[ally] measured in money \*\*\*: the value of goods and services received by an individual in a given period of time.' Webster's Third New International Dictionary 1143 (1986). It has likewise been defined as '[t]he money or other form of payment that one receives, usu[ally] periodically, from employment, business, investments, royalties, gifts and the like.' Black's Law Dictionary 778 (8th ed. 2004)." *Rogers*, 213 Ill. 2d at 136-37.

Illinois courts have also defined "income" as " ' "a gain or profit" [citation] and is "ordinarily understood to be a return on the investment of labor or capital, thereby increasing the wealth of the recipient" [citations].' " *In re Marriage of Worrall*, 334 Ill. App. 3d 550, 553-54 (2002).

Under these definitions, a variety of payments qualify as income under section 505(a)(3). Courts have included individual retirement account (IRA) disbursements representing deferred employment earnings, receipt of company stock from employment stock options, worker's compensation awards and the proceeds from pensions as income under the Dissolution Act. See *In re Marriage of Lindman*, 356 Ill. App. 3d 462 (2005); *In re Marriage of Colangelo*, 355 Ill. App. 3d 383 (2005); *Department of Public Aid ex rel. Jennings v. White*, 286 Ill. App. 3d 213 (1997); *In re Marriage of Klomps*, 286 Ill. App. 3d 710 (1997). However, using the same statutory definition, other courts have determined that withdrawals from self-funded IRAs and proceeds from the sale of residential property do not constitute income under section 505(a)(3). See *In re Marriage of O'Daniel*, 382 Ill. App. 3d 845 (2008); *In re Marriage of Baumgartner*, 384 Ill. App. 3d 39 (2008).

In *O'Daniel*, the appellate court determined that the father's IRA disbursements did not constitute income because IRA accounts are

ordinarily self-funded by the individual account holder. The court noted that "[w]hen an individual withdraws money he placed into an IRA, he does not gain anything as the money was already his. Therefore, it is not a gain and not income." *O'Daniel*, 382 Ill. App. 3d at 850. In reaching its conclusion, the court reasoned that the only portion of the IRA that would constitute a gain for the individual, and therefore income for purposes of child support, would be the interest or appreciation earnings from the IRA. *O'Daniel*, 382 Ill. App. 3d at 850; see also *Baumgartner*, 384 Ill. App. 3d at 57 (where parent sells home and uses proceeds to purchase new home, proceeds are not actually available as income).

■ In this case, the proceeds from the reverse stock split of Michael's AEC shares did not involve a gain or recurring benefit or employment compensation. Michael received the proceeds as a result of an involuntary purchase of stock he owned, which resulted in a capital loss. In reality, the forced sale reduced Michael's wealth because he no longer received the yearly dividends the stock generated. While the dividends or earnings the stock produced constituted income under section 505(a)(3), the sale of the stock did not. The cash proceeds took the place of the former shares of stock. Michael then used those proceeds to purchase gold coins. The asset already belonged to Michael, and the proceeds were used to purchase another investment asset. Accordingly, the proceeds do not qualify as income for child support purposes.

In reaching our conclusion, we note that the distribution of stock may constitute income for child support purposes if the stock is sold pursuant to an employment bonus-based option. See *Colangelo*, 355 Ill. App. 3d 383. Here, however, the sale of Michael's stock was necessitated by the company's decision to implement a reverse stock split of minority shareholders, a decision over which Michael had no control.[1] He then utilized the proceeds to purchase other investment assets. Under these circumstances, the proceeds do not qualify as "net income" under section 505(a)(3).

## B. Gifts From Parents

Molly also argues that the trial court erred as a matter of law in failing to include gifts that Michael may receive from his family as income under section 505(a)(3) of the Dissolution Act.

---

[1]The record indicates that the company forced all shareholders who owned less than 5% to sell their stock. The letter to the shareholders explicitly stated that all stockholders who owned less than 5% "will be cashed out at the current appraised value per share and will no longer own stock in AEC Holding Company."

In calculating net income, the trial court is required to include all income, regardless of its recurring nature. *Einstein*, 358 Ill. App. 3d at 271. The relevant focus under section 505(a)(3) is the noncustodial spouse's economic situation at the time the child support calculations are made. If a parent receives payments that would qualify as "income" under the Dissolution Act, those payments may not be excluded on the basis that they might not be received in the future. *Rogers*, 213 Ill. 2d at 138. The trial court's net income determination lies within its sound discretion. *Deem*, 328 Ill. App. 3d at 457.

In *Rogers*, the noncustodial father received yearly gifts and loans from his parents totaling more than $46,000, which he had never been required to repay. The court concluded that the annual gifts were income for purposes of determining child support because they represented a valuable benefit to the father that enhanced his wealth and facilitated his ability to support his son. *Rogers*, 213 Ill. 2d at 137.

■ In this case, Molly requested language in the court's order requiring Michael to include 28% of any gifts or loans he may receive from his parents in his child support payments in accordance with statutory guidelines. The evidence demonstrated that Michael received significant annual gifts from his parents, including substantial "loans" without repayment and a vehicle. These gifts appear to represent a continuing source of income that he has received over the course of his adult life. Moreover, they are a valuable benefit to Michael that facilitate his ability to support the girls. The trial court should not exclude such payments simply because similar payments may not occur in the future. See *Rogers*, 213 Ill. 2d at 138. Accordingly, any substantial gifts from Michael's parents should have been included in his net income, and the trial court abused its discretion in failing to consider them for child support purposes. We therefore remand the matter for the trial court to enter a modified child support order to include as income gifts Michael receives from his family.

## C. Bonus/Commission

Next, Molly argues that the trial court improperly computed Michael's net income by failing to include any bonus or commission that he may earn.

■ As with Michael's gifts, the trial court's refusal to include 28% of Michael's bonuses in its calculation of net income was an abuse of discretion. In *Einstein*, the father maintained it was unfair to include his $10,000 bonus in calculating net income because it was not guaranteed from year to year. *Einstein*, 358 Ill. App. 3d 263. The *Einstein* court held that the bonus payment he received, although possibly not recurring, should be included for support purposes. *Einstein*, 358

Ill. App. 3d at 271. Like the father in *Einstein*, Michael's bonus is not guaranteed. However, Michael is entitled to one if he satisfies certain employee expectations, and any bonus or commission he earns is income for purposes of determining child support. Accordingly, the trial court erred in refusing to include his bonus in the child support award. On remand, the trial court should order Michael to pay 28% of any bonus or commission he earns from his employer as child support.

## II through VII

The following material in sections II through VII is not to be published pursuant to Supreme Court Rule 23. 166 Ill. 2d R. 23.

## CONCLUSION

For the foregoing reasons, we affirm and remand for modification of the May 27, 2009, support order regarding any gifts and bonuses Michael receives, retroactive to the date of the order. For the remaining unpublished issues, we remand for reconsideration of Michael's request to modify maintenance in light of the stock proceeds. We reverse the award of attorney fees and remand for a separate hearing to determine the amount of fees related to the petitions for rules to show cause. We vacate that part of the court's order that relieved Michael of his duty to file amended tax returns for the years 2005 through 2008 and remand with further instruction. We also vacate that portion of the trial court's order modifying Michael's income reporting obligation and reinstate the previous reporting requirements. We otherwise affirm the trial court's order resolving the remaining issues in the dissolution proceeding. See *In re Marriage of Walters*, 238 Ill. App. 3d 1086 (1992).

Affirmed in part; remanded in part; reversed and remanded in part; and vacated and remanded in part.

CARTER, J., concurs.

JUSTICE McDADE, concurring in part and dissenting in part:

I am in general agreement with the majority's analysis and conclusions regarding each of the issues on review save one. For the reasons that follow, I believe the trial court erred in concluding that the proceeds of the sale of Michael's AEC stock did not constitute income and further believe that those proceeds should be considered in the recalculations of child support and maintenance on remand. I would reverse the trial court's order on that issue and, therefore, respectfully dissent from the majority's contrary decision.

Molly argues first that the trial court erred in treating the sale as an exchange of one form of property for another form of property. Instead she contends the funds are income for child support purposes because income includes "a valuable benefit *** that enhance[s] *** wealth and facilitate[s] *** ability to support." *In re Marriage of Rogers*, 213 Ill. 2d 129, 137, 820 N.E.2d 386, 390 (2004). Molly concedes that the stock itself was an "intangible" and "non-spendable" "non-producing asset." However, once Michael sold it, he acquired "something [he] could spend as he saw fit." Molly asks this court to order him to pay 28% of those funds as child support. Second, Molly asserts that under section 510(8) of the Dissolution Act, the income from the sale of the stock is property that the trial court should have considered in determining Michael's maintenance obligation.

Michael responds *Rogers* is distinguishable because the sale of his stock was not a "gift" and the proceeds of the sale are not income because "[t]he cash proceeds from the stock purchase *** took the place of the former shares of stock, as another form of property." Michael notes the property in its former form (shares of stock) was nonmarital property, and he relies on *In re Marriage of O'Daniel*, 382 Ill. App. 3d 845, 850, 889 N.E.2d 254, 258 (2008), for the proposition that because the "property" already belonged to him as nonmarital property, the change in form of the property from stock to cash does not make the cash "income."

In *O'Daniel*, the question was whether an IRA distribution constituted income. The court held:

> "When an individual withdraws money he placed into an IRA, he does not gain anything as the money was already his. Therefore, it is not a gain and not income. The only portion of the IRA that would constitute a gain for the individual would be the interest and/or appreciation earnings from the IRA." *O'Daniel*, 382 Ill. App. 3d at 850, 889 N.E.2d at 258.

I find Michael's argument to be unpersuasive. As his nonmarital property, the stock represented an investment. Thus, *O'Daniel* actually supports Molly's position that Michael's earnings from the investment constitute income. *O'Daniel* holds that any appreciation in value of the stock "would constitute a gain." Michael notes he suffered a capital loss from the transaction. Under *O'Daniel*, the amount of the capital loss goes to the question of whether, as a result of the transaction, his wealth was enhanced, and may reduce the amount of real income generated from the proceeds of the sale. However, a capital loss would not change the nature of the earnings generated by the asset, which in this case constitutes cash proceeds of sale, from income to property. See also *In re Marriage of Colangelo*, 355 Ill. App. 3d 383,

392, 822 N.E.2d 571, 578 (2005) ("even though the unrealized stock options were allocated to the parties as marital property, the realized stock distribution met the definition of 'income' for purposes of determining child support").

Michael also notes that the company required him to cash out his shares as a result of its decision to institute a reverse stock split. While the fact that Michael did not choose to sell his asset but was forced to sell is relevant to the question of his good faith in the transaction, it is irrelevant to the question of whether the transaction generated spendable earnings that enhanced his wealth.

Michael contends that "[t]he concept of property is distinct from income; otherwise, all property transactions, which naturally result in another form of property, would be considered income." However, if cash proceeds are held to be just another form of property, then no sale of a capital asset would ever generate income. As our supreme court has noted:

> "As the word itself suggests, 'income' is simply 'something that comes in as an increment or addition ***: a gain or recurrent benefit that is usu[ally] measured in money ***: the value of goods and services received by an individual in a given period of time.' Webster's Third New International Dictionary 1143 (1986). It has likewise been defined as '[t]he money or other form of payment that one receives, usu[ally] periodically, from *** investments, royalties, gifts and the like.' Black's Law Dictionary 778 (8th ed. 2004)." (Emphases added.) Rogers, 213 Ill. 2d at 136-37, 820 N.E.2d at 390.

I believe this court should hold that the proceeds of Michael's stock sale constitute income.