2021 IL App (1st) 200901

FIRST DISTRICT
SIXTH DIVISION
December 17, 2021

No. 1-20-0901

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| ALLISON L. ASH, f/k/a Allison L. Matschke, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 2013 D 005975 |
| and | ) | |
| | ) | |
| MASON H.C. MATSCHKE, | ) | Honorable |
| | ) | Regina Scannicchio, |
| Respondent-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Mikva and Oden Johnson concurred with the judgment and opinion.

## OPINION

¶ 1    Respondent, Mason H.C. Matschke, appeals the trial court's order modifying his maintenance and support payments. On appeal, Mason contends the court erred in (1) failing to include loans from petitioner Allison L. Ash's parents as her income in calculating child support and maintenance payments; (2) failing to reducing Mason's share of the children's medical, extracurricular, and educational expenses; and (3) ordering an amount of child support that deviated upward from the statutory guidelines. For the following reasons, we affirm.

¶ 2                                I. JURISDICTION

¶ 3    On July 27, 2020, the trial court denied Mason's motion to reconsider, finding no just reason for delaying enforcement or appeal. He filed his notice of appeal on August 24, 2020.

Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), which allows for appeals although other matters remain pending.

¶ 4                  II. BACKGROUND

¶ 5     The parties were married on September 23, 1995, and they subsequently had four children: James born in 1997, Benjamin born in 1999, William born in 2002, and Ian born in 2005. In July 2013, Allison filed a petition for dissolution of marriage. A judgment for dissolution was entered by the trial court on October 16, 2017.

¶ 6     At the time of judgment, Mason was employed by Raymond James & Associates (Raymond James), and Allison was a homemaker. The court averaged Mason's income from 2013 to 2016 in determining that his gross income was $262,867.50. After subtracting allowable deductions, Mason's average net annual income was $186,635.92. As three of the children were minors, the court set Mason's child support obligation at $2488.48, to be paid every two weeks. Mason also would pay 70% of the children's uncovered medical, dental and therapeutic costs; 100% of their extracurricular expenses; and 70% of their educational expenses.

¶ 7     James, at 19 years old, had achieved *de facto* emancipation. Allison maintained, however, that he was disabled due to alcoholism and attention deficit hyperactivity disorder. The trial court found there was no evidence that either condition limited James's major life activities, and it declined to adjudge him disabled under section 513.5 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/513.5 (West 2020)). Although James did not qualify for support from either party, the parties could voluntarily provide support if they chose to do so.

¶ 8     The trial court also found that Allison was a maintenance candidate. Following the statutory guidelines, Allison was entitled to a support payment of $3285.83 every two weeks. Since

the parties were married 21 years, the payments would be permanent or for a period equal to the duration of the marriage. However, since Allison's parents funded an irrevocable trust in her name, the trial court deviated downward from the statutory guidelines and ordered support payments of $3000 every two weeks for 10 years.

¶ 9    The court further found that

"ALLISON's parents loaned her a total of $36,509.39 for expenses relating to the 5400 Franklin property. This Court also finds that the Ashes made payments in the amount of $206,912.46 on behalf of the parties' minor children. Therefore it was the parties' obligation to meet these expenses. The Court also finds that said loans were adequately substantiated by evidence such as copies of cashed checks and promissory notes. This Court finds that a total of $243,421.85 ($206,912.46 + 36,509.39) should be repaid to JOANNE and DAVID ASH. Said repayment shall come from the escrowed proceeds from the sale of 5400 Franklin. The balance of the escrowed proceeds, if any, shall be equally distributed between the parties."

¶ 10    On May 1, 2018, Mason filed a petition to modify his child support and maintenance obligations. The petition alleged that since the dissolution judgment "there has been a substantial and material change in circumstances relative to Mason's income." In the judgment, the trial court found Mason's average annual net income through March 2016 to be $186,635.92. Mason alleged that, at the end of 2016, his gross earnings were $155,411.47, his gross earnings at the end of 2017 were $166,401.19, and his gross earnings for the first four months of 2018 totaled $47,971.78. Furthermore, one of the parties' minor children, Benjamin, had reached the age of emancipation.

Mason requested a modification of his support and maintenance payments and of his share of the children's medical, extracurricular and educational expenses.

¶ 11     At the hearing on the petition, Mason testified that in 2018 his gross wages were $146,575 and he received approximately $5100 from the Chafee Family Trust. He testified that there have been changes since his latest financial affidavit. His gross income decreased from $12,122 monthly to $11,121, and his rent doubled to $1280 per month because he no longer lived with his girlfriend. Also, his monthly dental costs increased from $135 to $400 due to root canals and 10 broken teeth.

¶ 12     Mason testified that he is on a payment plan of $600 per month regarding his debt to the Internal Revenue Service (IRS). He currently has a 401(k) loan of $27,000, and his Visa bill exceeds $5000. In 2017, he paid Allison 50% of his net monthly income, but in 2018, maintenance and child support were garnished from his monthly pay. He testified that out of 13 pay periods in 2018, he received no income on 7 occasions. To pay his bills, Mason borrowed $20,000 from his individual retirement account.

¶ 13     On cross-examination, Mason stated that he now works in the Waukesha, Wisconsin, office of Raymond James on a 100% commission basis. He received $575,000 from his employer in the form of a paid loan, which he reported as income of approximately $80,000 per year for eight years. Raymond James paid him a bonus to cover taxes on the reported income. He did not give Allison any of his 2017 tax refund because it "went directly to the IRS." Mason anticipated that his 2018 tax refund would also go to the IRS. In 2017, Mason contributed $9865.77 to his 401(k). According to his December 31, 2018, pay stub, Mason contributed $4248.44 to his 401(k) that year and $6300 to another retirement account. He admitted that his gross income in 2017 and 2018 was more than his income in 2016.

¶ 14    The Raymond James bonus agreement of March 9, 2011, and the agreement dated January 2, 2009, were paid off in 2016. Mason denied that he has more available income as a result because he has "no control" over his income, which depends on his clients working with him and making monthly transactions. On redirect examination, Mason explained that his Raymond James bonus of approximately $80,000 to $100,000 per year for eight years "went to pay taxes." He stated that the amount was included in his gross income even though he never received the money.

¶ 15    Allison testified as an adverse witness. She stated that she has a bachelor's degree in sociology and was previously employed with Prudential Securities as an administrative assistant. She left her position to care for her children. She testified that she would seek employment in the future when her children are "in a better place." She has a 13-year-old and a 16-year-old at home, her 19-year-old is still at home, and her 21-year-old lives in California. Her 19-year-old, who is now emancipated, works part-time and attends school part-time.

¶ 16    Allison stated that her monthly expenses are $10,636.66. She uses the money she receives from Mason, and money she borrows from her parents, to pay her expenses. When she does not have money for her monthly rent of $2500, she borrows money from her parents. Allison signs notes "from time to time" for the money she has borrowed, but she has yet to pay back any monies. She "absolutely" plans on paying her parents after she gets a job and receives more money from Mason.

¶ 17    Allison meets with her parents on a monthly basis to "give them the bills that are owed— or due to my credit card." They write a check, and Allison signs an IOU that they have kept for the past five years. Her loans are detailed in a notebook/log. Allison uses a Nordstrom Visa card

to pay her bills, and her parents never refuse to make the payments on the card. In 2017, her parents purchased cars for her and Ben as gifts.

¶ 18    Allison's financial affidavit showed loans from her parents amounting to approximately $700,000 and an additional loan for attorney fees of approximately $800,000. The affidavit showed that Allison was making monthly payments of $7656.65 on the Visa account. The affidavit also indicated that, currently, Allison is making no payments on the loans from her parents.

¶ 19    The trial court determined that Mason proved a substantial change in circumstances where one of the children has turned 18 years old and his income has decreased since the dissolution judgment. The court also found that the decrease in Mason's income was not the result of bad faith or for the purpose of avoiding his obligations. After considering the factors listed in section 510(a-5) and 504(a) of the Marriage Act, the court found that although Mason's income has decreased, the other factors were the same as at the time of judgment. Therefore, Allison remained a candidate for maintenance.

¶ 20    In calculating Mason's income, the court looked at the money he received from the Chafee Trust and his gross income from Raymond James. The court determined Mason's average income from 2016 to 2018 to be $167,472.26. Thirty percent of that amount was $50,241.83, and maintenance to Allison would therefore be modified to $1932.38 every two weeks.

¶ 21    Regarding support for the children, Mason had asked the court to impute income to Allison based on the payments her parents made for her. Citing *In re Marriage of Tegeler*, 365 Ill. App. 3d 448 (2006), the trial court found that generally loan proceeds are not included as income when determining child support payments. However, if there is no expectation of repayment, the loan could be considered income.

¶ 22    The court determined

"there is evidence to suggest that the payments made by ALLISON's parents are loans. The monthly payments made to the Visa account are less than the total amount of support this Court order[ed] MASON to pay pursuant to the judgment. Because MASON has not paid the full amount, ALLISON gets assistance from her parents. ALLISON listed the total amount owed to her parents for family expenses, which includes payments made to this Visa account. Similarly, ALLISON submitted the log [she] and her parents use to keep track of the payments made, including the monthly payment on the Visa account. Based on ALLISON's testimony, ALLISON and her [parents] keep track of every payment they have made for ALLISON, they sign notes for these payments, and they expect ALLISON to pay the loans back. Based on this evidence, ALLISON and her parents intend for ALLISON to repay them for these payments. Therefore, these payments are loans and should not be imputed in ALLISON's income."

¶ 23    The trial court calculated Mason's average net income per month to be $6836. Allison's gross monthly income was $4186.82 from her maintenance, and her net monthly income was $3314. Based on the statutory guidelines, Mason's monthly child support obligation would be $1346.18. The court, however, believed this result was unjust.

¶ 24    The court noted that section 505(3.4) of the Marriage Act allowed for deviations from the statutory calculations under certain circumstances. It found that one of the children has special medical, physical, or developmental needs and, as a result, Allison is unable to work full-time. The court also found that "a strict application of the guidelines would not be in the best interest of

either child, given their needs as evidenced by Allison's expenses." Therefore, the court applied an upward deviation and determined Mason's monthly child support obligation to be $3048.

¶ 25   The trial court then addressed Mason's request to modify his share of extracurricular, medical, and educational expenses. It found that, although one child is now emancipated and Mason's income has decreased, those factors are not relevant in determining his obligation for these expenses. Furthermore, the needs of the children remain the same as at the time of the dissolution judgment. As such, Mason did not satisfy his burden to show a substantial change in circumstances as required to modify his obligations.

¶ 26   The trial court therefore granted Mason's motion to modify his maintenance and support payments but denied his request to modify his payments for his children's extracurricular, medical, and educational expenses.

¶ 27   Mason filed a motion to reconsider, arguing that the trial court misstated Mason's gross income. Mason also alleged that the court erred in making an upward deviation in child support based on an unnamed child having special needs when no evidence was presented regarding the special needs of the two minor children. Mason further contended that the loans from Allison's parents were actually gifts and that she received $24,244.60 per month from them. Her parents also paid for her home and the costs associated with the home.

¶ 28   Allison responded that Mason's motion merely restated his arguments and thus did not meet the standard for filing a motion to reconsider. Also, the court did not misstate Mason's income, and the upward deviation in child support was properly based on evidence in the record. She noted that the record contains orders appointing therapists for the children at the request of the guardian *ad litem* (GAL). She denied that the money from her parents was a gift because the

amounts were documented and signed for contemporaneously with the lending of funds. Furthermore, Mason owes Allison $63,041.69 in outstanding child support and maintenance payments and approximately $10,000 in child-related expenses, for the period of October 16, 2017, to May 16, 2018. Allison contended that, if Mason timely paid the amounts ordered by the court for maintenance, child support, and expenses, she would not have to borrow money from her parents.

¶ 29    In denying Mason's motion to reconsider, the trial court found that the Matschke case had been before the court for a long time and the court was very familiar with the family. During the proceedings, significant issues had been raised regarding the parties' children. As a result, the court appointed a GAL for each of the children, and at the GAL's request, a therapist was appointed for them.

¶ 30    Mason filed this appeal.

¶ 31                                III. ANALYSIS

¶ 32    As an initial matter, Allison argues that Mason's brief does not conform to Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) because he failed to provide a statement on whether an issue is raised on the pleadings. She also points to his failure to cite the record as support for some of his claims and his mischaracterizations of the evidence. As a result, she contends his brief should be stricken and the appeal dismissed. The supreme court rules are not merely advisory suggestions; rather, they must be followed. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. Consequently, where an appellant's brief contains Rule 341 violations that impede our review of the case at hand, we may strike that brief and dismiss the appeal. *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23. We are mindful that "[t]he striking of an appellate brief, in whole or in part, is

a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review." (Internal quotation marks omitted.) *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005). Even if Mason's brief does not fully comply with the rules, the violations do not affect our ability to address the issues in this appeal. We therefore choose to reach the merits. *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14. However, we will disregard any inappropriate or unsupported statements or arguments.

¶ 33　　On appeal, Mason does not challenge the trial court's decision to modify his maintenance and support obligations. Rather, he contends that the trial court erred when it refused to include the sums Allison received from her parents as income for child support and maintenance purposes. The trial court found that Allison received a loan from her parents, and under the Marriage Act, a loan generally is not "income" for support purposes. Whether loans are considered income under the Marriage Act is a question of law subject to *de novo* review. *In re Marriage of Rogers*, 213 Ill. 2d 129, 135-36 (2004).

¶ 34　　In a dissolution proceeding, the trial court may order either or both parents to pay child support. 750 ILCS 5/505(a) (West 2018). To determine the amount of support, the court must calculate "each parent's monthly net income." *Id.* § 505(a)(1.5)(A). The statute defines net income as "gross income" minus enumerated standardized tax amounts and adjustments pursuant to subparagraph (F). *Id.* § 505(a)(3)(B). Gross income, in turn, is defined as "the total of all income from all sources," excluding certain benefits not relevant here. See *id.* § 505(a)(3)(A). This is also the definition of "gross income" for determining maintenance under section 504(b-3) of the Marriage Act. See *id.* § 504(b-3). Therefore, in calculating child support and maintenance the trial court must first ascertain "the total income from all sources" the parent received. (Internal

quotation marks omitted.) *Rogers*, 213 Ill. 2d at 136.

¶ 35    The Marriage Act does not define "income," so in *Rogers* the supreme court gave the term its plain and ordinary meaning. *Id.* The word suggests " 'something that comes in as an increment or addition,' " " 'a gain or recurrent benefit that is usu[ally] measured in money,' " or " 'the value of goods and services received by an individual in a given period of time.' " *Id.* at 136-37 (quoting Webster's Third New International Dictionary 1143 (1986)). The court recognized that the phrase "total of all income from all sources" was expansive and included "a variety of payments" that would not qualify as taxable income under the Internal Revenue Code. (Internal quotation marks omitted.) *Id.* In *Rogers*, the monetary gifts given to the father "represented a valuable benefit \*\*\* that enhanced his wealth and facilitated his ability to support" his child. *Id.* at 137. Accordingly, the supreme court affirmed the trial court's decision to include the annual gifts as income. See *id.*

¶ 36    The court also considered annual "loans" given to the father by his parents. It found, however, that "the sums at issue here are loans in name only." *Id.* at 140. The father never had to repay these "loans" and by his own testimony, he stated that the money represented a steady source of dependable income. *Id.* The supreme court concluded that these sums were "no less 'income' than the gifts [his parents] gave him or the salary he received from his teaching job." *Id.* Since the money was a loan "in name only," the supreme court had "no occasion \*\*\* to address whether and under what circumstances loan proceeds are properly regarded as an element of income for child support purposes." *Id.* at 140.

¶ 37    In *Tegeler*, the Second District did consider whether loans should be considered income under the Marriage Act. The respondent was a farmer whose sole source of income came from farming. *Tegeler*, 365 Ill. App. 3d at 451. To run his farm, he received annual loans from the bank

through a line of credit: in 2002, his line of credit was $460,000; in 2003 it was $650,000; and in 2004, it was $660,000. *Id.* at 457. The petitioner argued that this line of credit is a source of income for child support purposes under the Marriage Act. The court found that "*in general*, loans should not be considered income" because "they usually do not directly increase an individual's wealth." (Emphasis in original.) *Id.* at 458. There was no evidence that respondent used the proceeds for anything other than farming expenses. *Id.* As such, the court did not consider the loans as income for child support purposes. *Id.* at 457. The court acknowledged, however, that there may be situations where a loan should be considered income under section 505. *Id.* at 459.[1]

¶ 38     In *In re Marriage of Baumgartner*, 384 Ill. App. 3d 39 (2008), the court considered whether a residential mortgage loan made by a *bona fide* lender was income under the Marriage Act. Finding no case law involving mortgages, the parties looked at how courts in other jurisdictions perceived student loans. The court noted that the cases relied on statutory definitions of income particular to each state or to federal law, so their usefulness was limited. *Id.* at 51. However, it found that "a determining factor in many of the above cases is whether repayment of the money received was required. Where repayment was required, the loan was not considered income." *Id.* at 52. The court held that the residential mortgage loan at issue was not income under section 505. Like *Tegeler*, the court emphasized it "[did] not hold that loan proceeds may never constitute income." *Id.*

¶ 39     In 2016, the legislature extensively amended section 505's support and income guidelines,

---

[1]The court also recognized that the appellate court in *Rogers* held that loan proceeds should be considered income under section 505 but disagreed with it. *Tegeler*, 365 Ill. App. 3d at 457. We note that the appellate court in *Rogers* relied on language in a prior version of the statute that no longer exists in the current version. As such, we need not consider the appellate decision persuasive authority here.

which now provide, in part, a specific list of "benefits" excluded from gross income and a definition of "business income" for purposes of calculating child support. See Pub. Act 99-764, § 5 (eff. July 1, 2017) (amending 750 ILCS 5/505). Although the amendments came after *Rogers*, *Tegeler*, and *Baumgartner*, the current statute does not mention loans or whether loans in general should be excluded from income. We know, however, that the Marriage Act's definition of gross income as "the total of all income from all sources" is expansive. See *Rogers*, 213 Ill. 2d at 136-37. Since we must construe provisions of the Marriage Act liberally so as to promote its underlying purposes (see 750 ILCS 5/102 (West 2018)) and the statute omits loans from its exceptions to "gross income," we believe the legislature intended courts to consider loans as potential income towards the support of a child. See *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 151-52 (1997) (explaining the rule of statutory construction that "omissions should be understood as exclusions").

¶ 40     While there may be good reasons to exclude certain loans from the gross income calculation, the amended section 505(a) provides the trial court with the means to make that determination on a case-by-case basis. Subsection (3.4) states that "[t]he court may deviate from the child support guidelines if the application would be inequitable, unjust, or inappropriate," provided the court makes written findings specifying the reasons for the deviation. 750 ILCS 5/505(a)(3.4) (West 2018). The reasons may include:

> "(A) extraordinary medical expenditures necessary to preserve the life or health of a party or a child of either or both of the parties;
>
> (B) additional expenses incurred for a child subject to the child support order who has special medical, physical, or developmental needs; and

> (C) any other factor the court determines should be applied upon a finding that the
>
> application of the child support guidelines would be inappropriate, after considering the
>
> best interest of the child." *Id.*

By adding subsection (3.4), the legislature understood that an appropriate support award necessarily depends on the facts of each case. Subsection (3.4) gives the trial court authority to deviate from the guidelines in order to tailor support to the case at hand. The broad language in subsection (3.4)(C) in particular reflects an intent to give the trial court, the body most familiar with the parties and their needs, flexibility in determining support based on the facts of the case.

¶ 41    In sum, the trial court should consider loans as potential income for purposes of calculating child support. Whether the loan in question is included as income depends on the facts of the case. If the trial court determines that the loan is not income for support purposes, it must make written findings setting forth its reasoning. See *id.* This interpretation also aligns with *Tegeler* and *Baumgartner*, which acknowledged that whether loans are income under section 505(a) is an inquiry specific to each case.

¶ 42    While *Tegeler* and *Baumgartner* involved loans from institutions, here the loans consist of money from Allison's parents. Mason argues that the Marriage Act presumes property transfers from parent to child are gifts, not loans, and that this presumption may be overcome only by clear and convincing evidence. See *In re Marriage of Wanstreet*, 364 Ill. App. 3d 729, 735 (2006); *In re Marriage of Hagshenas*, 234 Ill. App. 3d 178, 186 (1992). We acknowledge the presumption, but that does not mean *Tegeler* and *Baumgartner* have no relevance here. The reasoning in those cases is helpful in ascertaining whether the loans at issue should be included as income under the Marriage Act. Specifically, important factors to this determination are (1) whether the money

directly increases the recipient's wealth (*Tegeler*, 365 Ill. App. 3d at 458) and (2) whether repayment of the loan is required (*Baumgartner*, 384 Ill. App. 3d at 52).

¶ 43    For example, in *In re Marriage of Anderson*, 405 Ill. App. 3d 1129, 1137 (2010), the court concluded that substantial annual "loans" received by the father from his parents, without expectation of repayment, should have been included as income. The court cited *Rogers*'s definition of income in finding that the money was "a continuing source of income" and provided "a valuable benefit" that facilitated the father's ability to support his children. *Id.* Similarly, the court in *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 64, determined that the funds the mother received from her parents, with no intention that she repay the money, were "loans in name only" and qualified as income for child support purposes.

¶ 44    Unlike the parties in *Rogers*, *Anderson*, and *Vance*, Allison testified that she is expected to repay the money her parents gave her. The trial court determined that Allison keeps track of the total amount owed to her parents for family expenses and that they expect her to pay them back. Mason, however, points out that Allison has yet to make a payment on the substantial loans from her parents. He argues that her testimony regarding her intent to repay the loans cannot be believed.

¶ 45    Allison testified that she would "absolutely" repay her parents when she starts working. She intends to look for a job once her children are "in a better place." The record indicates that the divorce has impacted the children and they are seeing therapists. The trial court stated it was familiar with the parties and found Allison to be a credible witness. It clearly believed that Allison was required to pay back the sums her parents loaned her and that she planned to do so. Evidence in the record also supports the trial court's determination. Allison submitted the log/notebook she uses to keep track of her debt, including the monthly payment on the Visa account. She testified

that she signed notes regarding the money owed to her parents. We are mindful that the trial court observed the conduct and demeanor of witnesses during the proceedings. Therefore, it was in a superior position to assess Allison's credibility, and we afford its judgment great deference. *In re Marriage of Bates*, 212 Ill. 2d 489, 516 (2004). A reviewing court must not substitute its judgment for that of the trial court regarding witness credibility, the weight assigned to the evidence, or the inferences to be drawn. *In re A.W.*, 231 Ill. 2d 92, 102 (2008).

¶ 46    Furthermore, contrary to the case in *Rogers*, *Anderson*, and *Vance*, the loans here did not provide Allison with a steady source of additional money that enhanced her wealth. The trial court determined that Allison used the money from her parents to pay for expenses that would have been covered by Mason's support and maintenance payments. The court found that the monthly payment of $7656.65 made to Allison's Visa account, which she used to pay expenses, was less than the amount Mason had to pay pursuant to the dissolution judgment which, before modification, was a total of $11,892 per month. At the time of the hearing, Mason owed $63,041.69 in outstanding child support and maintenance payments and approximately $10,000 in child-related expenses, for the period of October 16, 2017, to May 16, 2018. Other arrearages have yet to be determined. Allison testified that she would not have borrowed from her parents if Mason had kept current with his payments. Mason acknowledges that he owes Allison money, and there is no evidence that she used the loans for anything other than expenses that would have been primarily covered by payments under the dissolution judgment.

¶ 47    Although Mason argues that Allison borrowed substantially more than he was obligated to pay, he bases his arguments on dollar amounts with scant citation of the record. As the party disputing the trial court's support award, Mason bears the burden of showing the court's abuse of

discretion. *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005). Accordingly, we find the trial court did not err in concluding that Allison received loans from her parents or in determining that such loans are not income under section 504 or 505 of the Marriage Act. See *In re Estate of Lukas*, 155 Ill. App. 3d 512, 521-22 (1987) (finding the clear and convincing standard satisfied where the trial court assessed the credibility of witnesses with competing testimonies and there was evidence in the record to support its determination).

¶ 48    Mason next contends that the trial court erred in failing to modify his obligations toward the children's medical, extracurricular, and educational expenses. He argues that he has demonstrated a substantial change in circumstances and "should no longer be paying the lion's share of these expenses." Our standard of review on this issue is abuse of discretion. *In re Marriage of Logston*, 103 Ill. 2d 266, 287 (1984).

¶ 49    Mason argues that an economic disparity exists regarding the payment of these expenses because his gross income is now $13,956.03 per month, from which he must pay $4186 as maintenance to Allison and $3048 as child support. He contends that leaves him with a cash flow of approximately $6722 per month compared with the $7234 per month Allison receives from him as maintenance and support. He argues that paying between 70 to 100% of the expenses is now disproportionate to the parties' cash flow and his obligation should be modified.

¶ 50    Mason cites no legal authority for his argument that the trial court must consider "cash flow" when determining a parent's obligation to contribute to the children's medical, extracurricular, and educational expenses, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) ("[a]rgument *** shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). Arguments that

fail to comply with Rule 341(h)(7) do not merit consideration on appeal. *In re Marriage of Hendry*, 409 Ill. App. 3d 1012, 1019 (2011).

¶ 51 Nonetheless, Allison's monthly income has also decreased because the trial court granted Mason's petition to modify his maintenance and support payments. The court found that, despite the parties' decline in monthly income, the children's need and expenses remained the same. Therefore, the trial court did not modify Mason's requirement to pay 70% of the uncovered medical expenses, 70% of the children's educational expenses, and 100% of their extracurricular expenses. An abuse of discretion occurs when no reasonable person would agree with the trial court's determination. *Brax v. Kennedy*, 363 Ill. App. 3d 343, 355 (2005). We find no abuse of discretion here.

¶ 52 Mason's final contention is that the trial court erred in making an upward deviation when it calculated his monthly child support payment. Based on the statutory guidelines, Mason's monthly child support obligation would be $1346.18. The court, however, believed this result was unjust. It found that one of the children has special needs and, as a result, Allison is unable to work full-time. The court determined that "a strict application of the guidelines would not be in the best interest of either child, given their needs as evidenced by Allison's expenses." Therefore, the court calculated Mason's child support obligation as $3048 per month.

¶ 53 The trial court has discretion to determine net income under the Marriage Act, and a reviewing court will not overturn that determination absent an abuse of discretion. *In re Marriage of Juiris*, 2018 IL App (1st) 170545, ¶¶ 18-19. The trial court's discretion includes its ability to "deviate from the child support guidelines if the application would be inequitable, unjust, or inappropriate." 750 ILCS 5/505(a)(3.4) (West 2018). However, if the trial court deviates from the

statutory guidelines, it must provide "written findings *** specifying the reasons for the deviation and the presumed amount ***without a deviation." *Id.*

¶ 54    Mason argues that there was no finding that any of the children have special needs. However, section 505(a)(3.4) states only that the court must specify the reason for the deviation, and the reason may include "additional expenses incurred for a child *** who has special medical, physical, or developmental needs." *Id.* § 505(a)(3.4)(B). In its written order, the trial court applied an upward deviation because one of the sons has special needs and Allison stays home "to ensure that her son's needs are met." The order did not name the child or specify the need, but nothing in the language of section 505(a)(3.4) suggests that the court's reasoning must provide such detail. See also *Melamed v. Melamed*, 2016 IL App (1st) 141453, ¶ 33. We find the trial court's deviation from the statutory guidelines complied with section 505(a)(3.4).

¶ 55    The case Mason cites as support, *In re Marriage of Jelinek*, 244 Ill. App. 3d 496 (1993), does not compel a different result. In that case, the trial court stated that it deviated from the statutory guidelines based on the parties' ability to meet the needs of the children. *Id.* at 508. The appellate court found, however, that "little evidence was adduced as to the needs of the children." *Id.* at 509. The only expenditures in the record pertaining to the children were expenses for maintaining the mother's homes in Evanston and Colorado. *Id.* Such expenditures, however, are generally excluded from child support calculations because they tend to result in an " 'exaggerated figure of support.' " *Id.* (quoting *In re Marriage of Stockton* 169 Ill. App. 3d 318, 327 (1988)). Based on the "the lack of evidence presented at trial as to the issue of child support," the appellate court reversed and remanded for recalculation of the child support award. *Id.*

¶ 56    Here, the trial court was familiar with the family and the children's expenses, having

presided over the proceedings from the beginning. The court deviated from the guidelines because one of the children has special needs and Allison must stay home to tend to those needs. The record contains evidence that the GAL requested therapists for each of the children and that they currently attend regular therapy sessions. The court indicated it had evidence before it regarding expenses associated with those needs. Unlike *Jelinek*, there was evidence in this case pertaining to expenses incurred for special needs. We find that the trial court did not abuse its discretion in ordering Mason to pay child support in the amount of $3048 per month.

¶ 57                                    IV. CONCLUSION

¶ 58    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 59    Affirmed.

**No. 1-20-0901**

| | |
|---|---|
| **Cite as:** | *In re Marriage of Ash*, 2021 IL App (1st) 200901 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2013-D-005975; the Hon. Regina Scannicchio, Judge, presiding. |
| **Attorneys for Appellant:** | Annette M. Fernholz, of Law Offices of Annette M. Fernholz, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Aldo E. Botti and Jean Lasics-Wessels, of Botti Law Firm, P.C., of Oak Brook, for appellee. |