LEONA F. PIERCE, Plaintiff-Appellant, *v.* MAURICE R. PIERCE, Defendant-Appellee.

Fifth District   No. 78-263

Opinion filed March 13, 1979.

Norman H. Kinder, Jr., of Kinder & Kinder, of Granite City, for appellant.

John T. Papa, of Callis & Hartman, of Granite City, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Leona Pierce appeals from an order of the circuit court of Madison County terminating alimony payments imposed upon Maurice Pierce pursuant to a property settlement agreement which was incorporated into their divorce decree. The sole issue on appeal is whether the trial court abused its discretion in finding sufficient changed circumstances to warrant termination of alimony.

The decree of divorce was entered on April 11, 1975. Under it Maurice was to pay Leona the sum of $350 per month as permanent alimony with payments commencing April 1. The alimony provision, as well as the entire property settlement was based on an oral stipulation between the parties and was found to be "reasonable and equitable" by the trial court. Throughout the divorce proceedings both sides were represented by counsel.

Leona filed a petition for rule to show cause against Maurice in August 1977 to compel him to pay back alimony. On August 25 the trial court found Maurice to be in arrears in the amount of $4000 and ordered him to pay an additional $150 per month until the arrearage was depleted. Shortly after this order was entered, Maurice filed a petition to modify the decree of divorce and requested that the alimony be eliminated or reduced on the basis of financial hardship due to a substantial change in circumstances.

Maurice testified at a hearing on the petition that his earnings were $21,413 in 1975, $23,013 in 1976, and $25,361 in 1977. He anticipated another raise in 1978. Since his divorce his income had increased approximately 20%.

Other evidence adduced at the hearing established that Leona moved to North Little Rock, Arkansas, after the divorce where she lived

in an apartment and paid $45 per month rent. Maurice meanwhile purchased a house for $37,500. Leona still drives a 1970 Ford Torino which she received in the property settlement, while Maurice purchased a new automobile for which he pays $163 per month. His list of monthly expenditures also included: payments for a cleaning lady who came once a week; payments on charge accounts at Famous-Barr, Sears, Master Charge, Bankamericard and Dial Finance totalling roughly $120; and a payment of $30 toward a vacation that he and his new wife took to Smokey Mountains, North Carolina, Virginia, Indiana and Ohio in the summer of 1977. Maurice had remarried shortly after his divorce from Leona became final.

The trial court entered an order in favor of Maurice on February 15, 1978, which terminated alimony upon two express conditions: that he pay Leona $4,000 which represented arrearage already owed her pursuant to a prior court order; and that he pay her an additional $8,400. The payment schedule under this order called for $100 per month until the $4,000 arrearage was exhausted and then $450 per month until the balance of $8,400 was paid.

■■■ Although the decree of divorce and the petition to modify alimony were both filed prior to the effective date of the Marriage and Dissolution of Marriage Act, the new act is applicable to the issue of changed circumstances, because the evidence adduced at the hearing on the petition to modify and the order terminating alimony both occurred after the new law was in effect. (Section 801(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 802(b)).) Accordingly, the issue of changed circumstances would be specifically controlled by section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 510(a)). Moreover, since section 510(a) is a recodification of section 18 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 19) with respect to the modification of alimony, case law defining section 18 would be applicable to section 510(a). The word "alimony" in section 18 is synonymous with the word "maintenance" used in section 510(a).

Section 510(a) provides:

"Except as otherwise provided in paragraph (f) of Section 502, the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to the filing of the motion for modification with due notice by the moving party and only upon a showing of a substantial change in circumstances."

Only facts and circumstances not in existence at the time of the divorce proceeding can serve as the basis for modifying an alimony provision in a divorce decree. (*Gregory v. Gregory* (5th Dist. 1964), 52 Ill.

App. 2d 262, 202 N.E.2d 139.) In the instant case the trial court made several findings of fact supporting its order terminating alimony; however, only one finding pertained to facts and circumstances arising after the decree had been entered. Only this latter finding is relevant to our disposition of this cause. Since the other findings were based on facts available to the trial court at the time the decree was entered, such findings could not be used to sustain an order terminating alimony due to changed circumstances.

As to the finding relevant to this case, the trial court specifically found that Maurice "has remarried and is supporting children as a result of that marriage and is experiencing financial difficulty."

Leona asserts that it was improper for the trial court to consider any of the monthly expenditures provided by Maurice in its decision to terminate alimony because these expenditures were all related to his remarriage and its attendant expenses in setting up a new household. The rationale for this assertion is that since the financial burden associated with his remarriage was nonfortuitous and of his own choosing his financial straits could not be a factor in determining whether there had been a showing of a substantial change in circumstances. She argues further that other than the improper evidence relating to expenses connected with his remarriage, no other evidence was offered as a cause for his money problems. Therefore, she concludes that he failed to demonstrate a substantial change in circumstances, especially in view of his 20% increase in salary since the entry of the divorce decree. We agree.

It is well settled in Illinois that a court will grant a reduction in alimony only where the circumstances which changed were fortuitous, and not brought on by the party seeking the change. (*Barrow v. Barrow* (5th Dist. 1975), 33 Ill. App. 3d 654, 342 N.E.2d 237; *Blowitz v. Blowitz* (1st Dist. 1966), 75 Ill. App. 2d 386, 221 N.E.2d 160.) Remarriage and the additional expenses of setting up a new home are nonfortuitous and should not be considered by a court when determining whether alimony should be modified. (*Barrow v. Barrow.*) "The remarriage of the defendant and a child by the second marriage does [*sic*] not present * * * a change of conditions sufficient to warrant a modification. Although the effect may be to deprive a second wife of support, from a legal standpoint, the first come first and the second come second." *Gregory v. Gregory* (1964), 52 Ill. App. 2d 262, 268, 202 N.E.2d 139, 143.

In the instant case, Maurice's payments on his house, car, credit accounts, cleaning lady and vacation were all incidental expenses of his remarriage and of his setting up a new household. As such these payments were nonfortuitous and improperly taken into consideration by the trial court in its order to terminate alimony.

Beyond the marriage and household expenses, no evidence was

presented by Maurice to show that his financial problems were the result of a calamity or event not of his own doing. This is not a case where a financial bind was brought on by a lengthy illness to himself or loss of income; to the contrary, he enjoyed a 20% rise in salary. Accordingly we hold that Maurice has failed to demonstrate the substantial change in circumstances necessary to warrant the termination of alimony.

Maurice asserts an alternate basis for sustaining the trial court's order by claiming that the property settlement agreement incorporated in the divorce decree was unfair and against public policy. *Crawford v. Crawford* (1st Dist. 1976), 39 Ill. App. 3d 457, 350 N.E.2d 103, is cited as authority for this point. However, we find this contention without merit.

In *Crawford*, the wife sought to have a property settlement agreement which was part of a divorce decree set aside. The property settlement was based on an oral stipulation between the husband and wife. She alleged that her attorney failed to inform her of the terms of the oral agreement, and that she did not comprehend the significance of the prove-up hearing on the property settlement agreement. On review, the court held:

> "[W]e * * * feel that (1) the instant settlement agreement was hastily contrived immediately before the prove-up hearing and (2) the divorce decree dissolving the 26-year-old marital union between the parties was based on an oral accord which the plaintiff not only expressed her aversion to, but immediately disavowed her prior consent to said compact. We therefore conclude that in all fairness, the plaintiff should have her day in court and the oral settlement disposing of her property and alimony interests should have been set aside and vacated." 39 Ill. App. 3d 457, 462, 350 N.E.2d 103, 108.

Maurice has made no allegations to the effect that he was uninformed about the terms in the property settlement agreement, or that he was misinformed by his attorney. Nor was there any allegation that he objected to the agreement immediately after it was approved by the trial court. Rather, he waited until he had been found in contempt of court before he voiced any objections as to the fairness of the provision. We find these facts inapposite to *Crawford*. Maurice was competently represented by counsel when he agreed to pay permanent alimony. In view of the short time between his divorce and remarriage, it is reasonable to conclude that he was negotiating for his freedom to remarry. After gaining this freedom, he attempts to eliminate or reduce his portion of the bargain. He has totally failed to demonstrate that holding him to his bargain is unfair and against public policy.

In further support of his contention that the property settlement agreement was against public policy, he points out that in addition to

equity and reasonableness, a court can rely on legislative intent in discerning public policy. He notes that legislative intent with respect to property settlement agreements is manifested in section 504(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 504(b)) which provides the court with six factors to weigh in assessing alimony. He argues that when this case is viewed under the criteria set forth in section 504(b), the property settlement agreement would be contrary to any result obtained by following the guidelines provided under that section and, hence, it would be contrary to public policy.

■■ We disagree with this rationale and hold that the Marriage and Dissolution of Marriage Act is not applicable in setting aside a property settlement on public policy grounds where the decree has been entered prior to the effective date of the Act.

In determining whether a property settlement agreement is against public policy, and therefore void at its inception, a court must limit its inquiry to only those facts in existence at the time of the entry of the decree. If section 504(b) were applied to this case, the trial court would have been limited to the same facts used by the previous court in adjudicating the property settlement issue. In essence, the trial court's application of section 504(b) would constitute a relitigation of an issue which had already come to judgment before the effective date of the Marriage and Dissolution of Marriage Act.

It is the legislature's intent under the new Act not to disturb issues already brought to judgment prior to its effective date. "[T]he legislature attempted through section 801(b) to allow only those issues which had not been fully litigated prior to the effective date of the new Act to be decided under the new law." *Staub v. Staub* (5th Dist. 1978), 67 Ill. App. 3d 1004, 1007, ___ N.E.2d ___, ___.

■■ Since the relitigation of settled issues would be the result of applying section 504(b) to decrees entered before the effective date of the Act, such an application for the purpose of challenging property settlement agreement provisions in those decrees would be contrary to the legislative intent of not disturbing issues brought to judgment under the old law. Therefore for the reasons stated above, we hold that this public policy rationale employed by Maurice to void the property settlement agreement is erroneous because section 504(b) is not applicable to this case.

This holding is not inconsistent with our earlier holding that the new Act applied to the issue of changed circumstances. With respect to the public policy issue, applying the new Act would result in relitigating an issue already brought to judgment, because the trial court would be constrained to base its decision on the same facts as the previous court;

whereas the issue of changed circumstances does not involve any relitigation, because a court would be constrained to base its decision on facts occurring subsequent to the decree of divorce which were never the basis of any prior adjudication.

■■ Leona requested the allowance of attorney fees in her prayer for relief. However, no petition for attorney fees with respect to the petition to modify was made before the trial court. Accordingly, we cannot entertain this request because it was raised for the first time on appeal.

Reversed and remanded.

KARNS and KUNCE, JJ., concur.