# Illinois Official Reports

## Appellate Court

*In re Marriage of Kuper*, 2019 IL App (3d) 180094

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF RITA KUPER, Petitioner-Appellee, and LAVERN KUPER, Respondent-Appellant. |
| District & No. | Third District<br>Docket No. 3-18-0094 |
| Filed | April 17, 2019 |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 11-D-41; the Hon. Michelle Vescogni, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded. |
| Counsel on Appeal | John Peter Morris Peskind, of Peskind Law Firm, of St. Charles, for appellant.<br><br>Rebecca M. Leynaud, of Law Offices of Leynaud & Leynaud, of Peru, for appellee. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justice Lytton concurred in the judgment and opinion.<br>Presiding Justice Schmidt dissented, with opinion. |

**OPINION**

¶ 1    The trial court denied ex-husband's petition to modify or terminate maintenance and granted ex-wife's motion to modify maintenance. The trial court increased ex-husband's obligation based on its calculation of ex-husband's income; although it should not have used the amended guidelines, the amount the court awarded in accord with the guidelines was appropriate based on the statutory factors. We affirm in part, reverse in part, and remand.

¶ 2                                    FACTS

¶ 3    Petitioner Rita Kuper and respondent LaVern Kuper were married on April 10, 1982, and had three children, all whom are now emancipated. Rita filed a petition for dissolution of the marriage in April 2011. A judgment of dissolution was entered on June 15, 2012, and a supplemental judgment of dissolution of marriage was entered on December 6, 2013, which incorporated the parties' marital settlement agreement (MSA). The MSA stated that LaVern would provide Rita $225 per week in maintenance and that maintenance would be reviewable in July 2016.

¶ 4    In August 2016, LaVern filed a petition to modify or terminate maintenance, alleging a substantial change in circumstances in that he retired. Rita filed a petition to modify or extend maintenance. A hearing took place on the parties' petitions. Rita testified that she lived in a house she bought for $83,000 in 2014, using assets she received in the dissolution for a $20,000 down payment and $5000 in repairs. She maintained a mortgage on the house. Her two adult children, aged 27 and 24, lived with her and each contributed $100 per month. She has a high school diploma and had attended two years of college but did not receive any degree or certificate. She took time off from working during the marriage beginning in 1986 and returning to the workforce in 1999 as a bus and lunchroom monitor. Her other work experience included employment at a fence and pool business, the movie theater, a video store, and the cafeteria at a Walmart distribution center. She currently worked at Didoughs Pretzel and had been there for five years. She earned $10.25 per hour, which was an increase from her initial pay of $9.35 per hour. She worked 40 hours per week but did not have insurance. She was last insured in 2009. She had applied for other jobs but was not granted interviews.

¶ 5    Rita testified regarding her financial affidavit. The affidavit, dated August 30, 2017, was admitted into evidence and provided as follows. Her net monthly earnings were $2899, which consisted of her earnings, maintenance payments and her portion of LaVern's Caterpillar pension. Her monthly expenses amounted to $2079. She had a monthly surplus of $820, which she deposited in her savings account. The account had a balance of $4220. She had total assets of $530,553, including her investment and retirement accounts. At the time of trial, her accounts were valued more than $536,000.

¶ 6    LaVern testified that he had remarried and his wife had three children aged 25, 22, and 20 years old. The 22-year-old was in college and lived with them on school breaks. LaVern owned and lived in the previous marital home. He maintained his wife's prior home and also owned and maintained his mother's house in Missouri, which he had inherited in 2013. LaVern retired from Caterpillar after 15 years in the maintenance department. He had started experiencing physical difficulties, received unsatisfactory performance reviews, and because he was planning to retire at the age of 60, he left. LaVern's physical difficulties included hand and arm tingling, which negatively affected his fingers, high blood pressure, diabetes, cataracts, and

depression, all of which impacted his ability to work. He officially retired on July 14, 2016, and began receiving his pension and profit sharing on August 1, 2016. At the time of his retirement, he had been earning $56,000 per year, plus overtime and profit sharing.

¶ 7 LaVern testified as to his financial affidavit dated July 11, 2017. His gross income in 2016 was $74,544.91, and it had dropped to $0 in 2017 due to his retirement. His monthly income was now $1613.37 and his expenses amounted to $4192.58, for a monthly deficit of $2579.21. His assets amounted to approximately $1,913,338. He inherited assets valued at $652,448.90 from his mother, who died in April 2013, and $293,693.17 from his uncle, who died in May 2013. He had to withdraw $25,000 from his accounts prior to trial to meet monthly expenses. He paid for his new wife's expenses, including the maintenance of her prior home. He also paid tuition and college expenses for her daughter and tuition for her son, despite these payments requiring him to utilize sums from his investment accounts and inheritances.

¶ 8 The trial court issued a ruling on January 22, 2018, denying LaVern's petition, granting Rita's petition, increasing the amount of maintenance, and making the award permanent. In reaching its decision, the court calculated LaVern's monthly income as $14,114.15 based on his pension payments and the amount he spent each month. The court considered the assets LaVern received from the inheritances from his mother and uncle provided additional assets from which he could afford to pay an increased amount in maintenance to Rita. Additionally, the court considered that LaVern was paying his new wife's expenses and supporting her children. The trial court found that Rita was in need of maintenance, in that without an award her monthly surplus of $50 would not allow for her to meet her needs. The court calculated a monthly maintenance amount of $3767 and made the award retroactive to January 1, 2017. LaVern timely appealed.

¶ 9 ANALYSIS

¶ 10 LaVern raises several issues on appeal. First, LaVern argues the trial court erred in increasing his maintenance obligation and making it permanent. Next, LaVern argues that the court inappropriately considered his investment withdrawals to determine his income. Last, he argues the court erred by applying the new statutory guidelines to a postjudgment review of maintenance.

¶ 11 We begin by addressing LaVern's claim that Rita does not need maintenance and the trial court erred in denying his motion to terminate it. He argues that the factors do not support a maintenance award, particularly in light of Rita's substantial investment accounts and her monthly needs. We disagree and affirm the award of maintenance.

¶ 12 In reviewing maintenance or considering a request to modify or terminate, the court should consider the following factors under section 510(a-5) of the Illinois Marriage and Dissolution of Marriage Act (Act):

"(1) any change in the employment status of either party and whether the change has been made in good faith;

(2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;

(3) any impairment of the present and future earning capacity of either party;

(4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage *** and the present status of the property;

(7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought;

(8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage ***; and

(9) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/510(a-5)(1)-(9) (West 2016).

¶ 13    The court must also consider the factors under section 504(a) of the Act, including: (1) the parties' income and property, including apportioned marital property and nonmarital property assigned to the party seeking maintenance and the financial obligations imposed on the parties resulting from their marriage dissolution; (2) each party's needs; (3) each party's realistic present and future earning capacity; (4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting his or her time to domestic duties or forgoing or delaying education, training, employment, or career opportunities as a result of the marriage; (5) the impairment, if any, of the realistic present and future earning capacity of the party against whom maintenance is sought; (6) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment and whether the party can support herself or himself through appropriate employment or parental responsibility arrangements, if any, and their effect on the party seeking employment; (7) the parties' standard of living during the marriage; (8) the marriage's duration; (9) each party's age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs; (10) all sources of income, public and private, including, without limitation, retirement income; (11) the property division's tax consequences on the parties' respective economic circumstances; (12) any contributions and services of the party seeking maintenance to the other spouse's education, training, career or career potential, or license; (13) any valid agreement of the parties; and (14) any other factor expressly found just and equitable by the court. 750 ILCS 5/504(a)(1)-(14) (West 2016). This court will not disturb a trial court's decision to modify maintenance absent an abuse of discretion. *In re Marriage of Bratcher*, 383 Ill. App. 3d 388, 390 (2008).

¶ 14    The trial court gave a detailed explanation of its application of the statutory factors. In considering the parties' needs, the court calculated that without LaVern's maintenance payment, Rita would have a monthly surplus of $50. While Rita still had substantial assets she received from the marital property distribution, without LaVern's maintenance payment, Rita's monthly incoming resources would not leave her any room for emergency expenses or unexpected costs. The $200 she received from her sons each month was not guaranteed to continue, as eventually both children could likely move out and begin independent lives. The court noted that Rita lived modestly and within her means while LaVern "elected to support three households at a monthly cost of over $13,000, which is within his means." The court found LaVern elected to retire, with no present or future earning capacity unless he returned to the workforce, and Rita was earning at a level consistent with her employment during the marriage and unlikely to earn much more in the future. The court noted that LaVern testified his health difficulties required him to retire but that he had not sought any other employment.

The court rejected LaVern's claim that Rita failed to seek more lucrative employment, finding she had sought other employment and that her job was aligned with her education, training, and employment history.

¶ 15    The court found it unlikely that Rita would ever be able "to fully support herself through employment with the standard of living established during the marriage" but also found that no evidence had been presented as to the standard of living and that the factor did not apply. The court noted the marriage was long term and that it considered the parties' circumstances and sources of income, including "the amount that LaVern effectively pays to himself each month from his investment accounts." The court also discussed what it considered just and equitable under the circumstances. It pointed out that in addition to the assets LaVern received in the dissolution, he also had substantial assets inherited from his mother and uncle. LaVern complains the inheritances were considered by the court in the property distribution. However, LaVern's financial affidavits do not include any reference to the stock, real estate, accounts, and funds he inherited. Although both he and Rita received equal distributions of more than $500,000 in marital assets, at the time of trial, LaVern's investment accounts topped $1.9 million and were supplemented by his substantial inheritances. In contrast to LaVern's increasing wealth, Rita testified her accounts were valued at more than $536,000, with withdrawals only for a down payment for her house and home repairs.

¶ 16    The court considered that LaVern paid monthly expenses for which he was not obligated, finding it significant that LaVern paid all the expenses for his new wife, who earned only $500 to $700 annually, that he spent more than $13,000 monthly to support three households, paid college expenses for his stepchildren, and had significant monthly expenditures for vacations, entertainment, dining out, and hobbies. The court also found important that Rita did not have health insurance and was unable to afford it even with the maintenance payments.

¶ 17    The trial court then considered the section 510(a-5) factors and found the following. The parties contemplated LaVern would retire in 2016 as evidenced by the provision that a maintenance review would take place in August 2016. LaVern was unlikely to find another job at the salary he was previously earning, given his age and work history, and Rita was unlikely to earn more income than she currently earned. Rita made reasonable efforts to become self-sustaining but was employed at an income that was not sufficient to provide for her support. Tax consequences were neutral, the marriage lasted 28 years and 10 months, and LaVern had paid maintenance for four years. The marital estate had been divided equally between the parties. The retirement portions from the distribution were relatively intact. No evidence was presented regarding Rita's income when the judgment of dissolution was entered, but the court found that LaVern, now retired and without a paycheck, was earning greater sums than when the judgment of dissolution was entered based on the court's calculation of his income.

¶ 18    The court further found that LaVern had inherited $1.1 million and real property subsequent to the judgment of dissolution. LaVern, although no longer employed, had "an increased ability to pay maintenance." The trial court expressed that it did not consider LaVern's regular withdrawals of significant sums from his investment accounts as additional income. It noted that he paid his credit card bill in full each month, supported his new wife and two stepchildren, and maintained three houses. He paid $11,700 per year in maintenance and spent $36,000 on tuition payments for his stepchildren. Considering the factors, the trial court

found that an award of maintenance was appropriate and LaVern's obligation to Rita should continue.

¶ 19     We agree that a permanent award of maintenance to Rita is warranted under the factors as spelled out by the trial court. While LaVern complains that Rita has sufficient assets received in the dissolution to sustain her lifestyle and has not demonstrated a need for maintenance, she testified that even with the surplus she saves each month, she is not able to afford to purchase health insurance. A former spouse is not required to exhaust all of her assets in order to meet her basic needs. *In re Marriage of Lichtenauer*, 408 Ill. App. 3d 1075, 1087 (2011). LaVern's assets and income have increased substantially since the dissolution due to the inheritances he received from his mother and uncle. The court considered that the inheritances gave LaVern the ability to pay an increased sum in maintenance to Rita. Therefore, the court's ruling that continued maintenance was appropriate and that it should be permanent was not an abuse of discretion.

¶ 20     We next consider whether the trial court's calculation of LaVern's income was an abuse of discretion. LaVern argues that the trial court improperly considered the withdrawals he made from his investment account as income, asserting that the funds do not qualify as income.

¶ 21     The maintenance provisions of the Act define gross income as "all income from all sources, within the scope of that phrase in Section 505" of the Act. 750 ILCS 5/504(b-3) (West 2016). Section 505 defines net income as "the total of all income from all sources," less enumerated deductions. 750 ILCS 5/505(a)(3)(a)-(i) (West 2016). In interpreting a statute, the primary rule for a court is to ascertain and effectuate the legislative intent. *In re Marriage of Lubbs*, 313 Ill. App. 3d 968, 969-70 (2000). The statute's plain language is the best indicator of the legislature's intent. *Id.* at 970. We review issues of statutory interpretation *de novo*. *In re Marriage of Rogers*, 213 Ill. 2d 129, 135-36 (2004).

¶ 22     In determining child support, income is considered as "simply 'something that comes in as an increment or addition ***: a gain or recurrent benefit that is usu[ally] measured in money ***: the value of goods and services received by an individual in a given period of time.' " *Id.* at 136-37 (quoting Webster's Third New International Dictionary 1143 (1986)). Income is also defined as " '[t]he money or other form of payment that one receives, usu[ally] periodically, from employment, business, investments, royalties, gifts and the like.' " *Id.* at 137 (quoting Black's Law Dictionary 778 (8th ed. 2004)).

¶ 23     Illinois courts have interpreted what qualifies as income under the Act. The money a payor husband voluntarily contributed to his IRA was considered income. *In re Marriage of Plotz*, 229 Ill. App. 3d 389, 393 (1992). Withdrawals from a self-funded individual retirement account (IRA) do not constitute income but the interest and/or appreciation earnings from the IRA was considered income. *In re Marriage of O'Daniel*, 382 Ill. App. 3d 845, 850 (2008). A reverse stock split resulting in a capital loss was not considered income for child support purposes where payor husband used the proceeds from the involuntary stock sale to purchase a replacement asset. *In re Marriage of Anderson*, 405 Ill. App. 3d 1129, 1136 (2010). Money withdrawn from a savings account during payor husband's period of unemployment was not characterized as income for child support calculation. *In re Marriage of McGrath*, 2012 IL 112792, ¶ 14. Stock that had vested was income for child support purposes. *In re Marriage of Schlei*, 2015 IL App (3d) 140592, ¶ 19.

¶ 24     Obligations to a payor husband's former wife take precedence over obligations arising from the ex-husband's new marriage. *Gregory v. Gregory*, 52 Ill. App. 2d 262, 268 (1964). A

- 6 -

paying spouse's remarriage and expenses incurred in setting up a new household are not proper factors for the court's consideration in determining whether to modify or terminate maintenance. *Pierce v. Pierce*, 69 Ill. App. 3d 42, 45 (1979). A payor's voluntary acceptance of nonlegal obligations are not to be considered in deciding whether maintenance should be modified or terminated. *In re Marriage of Rushing*, 258 Ill. App. 3d 1057, 1062 (1993).

¶ 25    In calculating LaVern's income, the trial court used the monthly expenditures LaVern listed on his financial affidavit to calculate his income. It found LaVern's income as follows: $728.25 from his Caterpillar retirement benefits; $6605.90, the amount LaVern paid monthly to maintain three homes; $6770 in other monthly payments, including $1085 for entertainment, dining out, and hobbies; $960 for gifts; $375 for donations; and $3025 for his stepchildren's tuition and expenses for a total monthly income of $14,114.15. Using these figures, the court found LaVern's annual income was $169,370. On his affidavit, LaVern listed his net monthly income at $1613.37 and his living expenses at $4192.58 for a monthly shortage of $2579.21. LaVern testified he withdrew funds from his investment accounts to make up the shortfall and meet his monthly expenses. The trial court expressly stated it did not consider LaVern's withdrawals as additional income and rejected Rita's argument that LaVern's income was $181,812, which represented all the withdrawals he took from his various investment accounts. The trial court relied on the inheritances LaVern received and the financial opportunities those assets provided him in calculating his income. We find it did not abuse its discretion in determining LaVern's monthly income to be $14,114.15.

¶ 26    Last, we examine whether the trial court erred in applying the new statutory guidelines to calculate a maintenance amount. LaVern argues that the calculation guidelines in section 504(b-1)(1) of the Act (750 ILCS 5/504(b-1)(1) (West 2016)) do not apply to review of post-dissolution maintenance.

¶ 27    This issue was recently addressed in *In re Marriage of Harms*, 2018 IL App (5th) 160472. There, like here, the maintenance order had been entered before the new guidelines became effective but the husband's petition to modify or terminate was filed and decided after their effective date. *Id.* ¶ 2. The trial court found the amended guidelines applied. *Id.* The reviewing court disagreed, reasoning that section 510 references only section 504(a) and does not mention section 504(b), which the trial court there, like here, used to calculate the maintenance amount and duration. *Id.* ¶ 30. The court held that the guidelines do not apply to proceedings to modify preexisting maintenance orders. *Id.* ¶ 35. Nevertheless, the reviewing court affirmed the trial court's maintenance modification, finding that an award consistent with the guidelines generally reflects a proper exercise of the court's discretion. *Id.* ¶ 36.

¶ 28    Because this issue involves a matter of statutory construction, our review is *de novo*. *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 40. Based on the plain language of section 510 of the Act, we agree with LaVern and the *Harms* court that section 504(b-1)(1) does not apply to post-dissolution maintenance modification on review. The statute dictates that the statutory factors are to be considered to assist the court in fashioning an appropriate amount when it is modifying maintenance and the guideline formula applies to new maintenance orders. Had the legislature meant for the maintenance formula under section 504(b-1)(1) to be used to calculate modified maintenance amounts, it would have referred to the section 504(b-1)(1) formula in section 510(a-5) along with the direction to the section 504(a) factors. Here, the trial court incorrectly used the amended guidelines to determine a maintenance amount. The *Harms* court chose not to remand the matter to the trial court for a recalculation of the maintenance award

using only the factors set forth in sections 510(a-5) and 504(a) because it determined it was within the court's discretion to award maintenance that was consistent with the amended guidelines. We believe, however, the better approach is to remand this matter to the trial court for a determination of maintenance to Rita in an amount based on the factors set forth in section 504(a) rather than the inapplicable formula set out in section 504(b-1)(1).

¶ 29                                     CONCLUSION

¶ 30        For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

¶ 31        Affirmed in part and reversed in part.

¶ 32        Cause remanded.

¶ 33        PRESIDING JUSTICE SCHMIDT, dissenting:

¶ 34        The record shows that a supplemental judgment of dissolution of marriage was entered on December 6, 2013, which incorporated the parties' MSA. The MSA provided for $225 per week in maintenance reviewable in July of 2016. *Supra* ¶ 3. LaVern's mother and uncle died in April and May of 2013.

¶ 35        In determining LaVern's monthly income, the trial court calculated LaVern's income based on his "pension payments *and the amount he spent each month*." (Emphasis added.) *Supra* ¶ 8. Taking judicial notice of the existence of the federal bankruptcy courts and the number of bankruptcy attorneys advertising on television, I conclude using the amount one spends to determine income is an irrational method.

¶ 36        The method that the trial court used in determining LaVern's monthly income is set forth by the majority. *Supra* ¶ 25. It determined income by looking at how much LaVern was spending.

¶ 37        I would reverse and remand with instructions to the trial court to use an acceptable accounting method of calculating LaVern's monthly income for purposes of determining maintenance.