**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190712-U

Order filed February 17, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| CHANCE W. BARLOW, | ) | Peoria County, Illinois. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-19-0712 |
| and | ) | Circuit No. 18-D-97 |
| | ) | |
| AMY R. BARLOW, | ) | |
| | ) | Honorable Suzanne L. Patton, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Daugherity and Lytton concurred in the judgment.

**ORDER**

¶ 1       *Held*:  The trial court did not err in (1) determining that maintenance was proper; (2) calculating respondent's income; (3) granting respondent's motion to reconsider; (4) utilizing the statutory guidelines to calculate the amount of the maintenance award; and (5) calculating respondent's net income using the individual taxable amount.

¶ 2       Petitioner, Chance W. Barlow, appeals from a judgment of dissolution of marriage. He contends that the trial court erred in awarding maintenance in favor of respondent, Amy R. Barlow. Chance contends that the trial court erred in: (1) awarding Amy maintenance; (2) calculating

Amy's income; (3) considering Amy's motion to reconsider; (4) using the guidelines to determine the amount of maintenance; and (5) applying Amy's individualized tax amount to determine the maintenance award. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4         On March 15, 2018, Chance filed a petition for dissolution of marriage. The parties were married in 2006. Relevant to this appeal is a bench trial held on the issue of maintenance.

¶ 5         Prior to the maintenance hearing, Amy filed an Illinois Maintenance Worksheet in which she calculated the amount of monthly maintenance she believed she should receive from Chance. She contended that she should receive maintenance of $933.58. Her calculation was based upon Chance's net income of $70,020 per year and hers being $28,008 per year.

¶ 6         At the hearing, Amy testified that she worked as a self-employed hairstylist for about 29 years. Her gross income for 2018 amounted to $55,530. Most of Amy's clients pay with checks, but she believed she received approximately $7000 in cash payments in 2018. She included both cash and check payments in her gross income. In 2016, Amy grossed about $46,000. In 2015, she grossed about $55,000. In the last ten years, her gross income fluctuated between $45,000 and $55,000. She testified that she would either use her credit card or cash to pay for expenses such as gasoline and groceries. Amy's monthly expenses included $485 per month for health insurance.

¶ 7         When questioned about the cash she received from clients, Amy acknowledged that she did not report the cash earnings on her tax returns.

¶ 8         Chance testified that he worked for the Peoria Fire Department and the Peoria Air National Guard. He worked as a fireman for 26 years. He paid child support for his son from a previous marriage in the amount of $1350 per month. He stated that Amy carried cash to pay for emergencies and spending. He stated that Amy would not report the cash income on the couple's

joint tax documents. He did not know how much unreported cash she earned. At the time of the trial, he reported a negative monthly cash flow.

¶ 9        Nicole Miller testified on behalf of Chance. Miller was not a certified public accountant, but had experience working as a bookkeeper who does tax preparation. She examined the parties' finances, including tax returns, credit card receipts, bank accounts, and financial affidavits. She analyzed the parties' finances from the middle of 2016 to the end of 2018. She was aware that Amy earned unreported cash, which she believed was used to pay for expenses. In her analysis, she believed the parties had equal net incomes. She calculated Amy's income based on how much money she deposited in her account. Miller did not verify whether the money deposited came from employment income. Miller surmised Amy earned between $12,000 and $13,000 in unreported cash. She assumed this amount based on Amy's financial affidavit, which stated that Amy spent about $200 for gas, $200 for meals, and $600 for groceries per month. Because Miller could not find bank statements showing these purchases, Miller believed the money came from unreported cash Amy earned. Although Miller stated that she reviewed Amy's credit card statements and found only a few charges for these expenses, those credit card statements were not admitted into evidence.

¶ 10        For half of the year in 2016, Nicole estimated that Amy grossed $30,788.50; Chance grossed $28,899. For 2017, Amy grossed $69,467.60; Chance grossed $71,066. For 2018, Amy grossed $79,032.94; Chance grossed $73,425.48.[1] Miller's analysis was entered into evidence as exhibit Y. The exhibit contains the parties' tax returns, bank statements, and financial affidavits. The exhibit does not contain the parties' credit card statements.

---

[1]Miller testified that she based her 2018 calculation on Amy's 2018 bank statements. However, it only appears that half of those statements were attached to exhibit Y.

¶ 11        Amy's financial affidavit indicates that she grossed $55,530 in 2018. She paid $625 per month to rent space for her salon. She spent $716 per month on salon supplies and products. She also paid $41.70 per month for accounting services, $10 for liability insurance, and $485 for health insurance.

¶ 12        Ultimately, the trial court entered a judgment for dissolution of marriage. The court made oral findings that Amy's average three-year income was approximately $67,159. The court based this conclusion on the weekly deposits Amy made into her account. The court used the average weekly deposits to reach its approximation of Amy's income. The court did not include the $7000 in cash Amy claimed to have made per year from cash paying clients. The court also did not mention reducing Amy's income with reasonable and ordinary business costs. Therefore, the court denied Amy's request for maintenance.

¶ 13        Amy filed a motion to reconsider. Amy argued the trial court erred by denying her request for maintenance. Specifically, Amy challenged the court's calculation of her income when it denied her request for maintenance. She also claimed that the court erroneously included non-income deposits in its income calculation. She argued that she deposited $48,530.00 from clients in 2018. She argued that the court erroneously included approximately $20,769 in its calculation of income because these deposits were not income: $3,067.46 came from the escrow the parties received from the sale of property; $3,197.54 came from the escrow the parties received from the sale of a second property; $2800 was a transfer from a savings account; $1250 was money paid by Chance to buy her out of a third property; $3500 was money she withdrew from her savings to pay her attorney fees; $1751 was a tax refund; $795 was an insurance reimbursement; and $4400 was rent from her mother from January to April. Amy argued that her actual gross income was $55,530 ($48,530 deposits + $7000 unreported cash). Amy further argued that the court should have

reduced her income by $23,012.40 in light of her ordinary business expenses. Therefore, she contended that the court erroneously calculated her income when determining if maintenance was proper.

¶ 14 Chance responded by first arguing that Amy's motion to reconsider contained evidence that could have but was not presented at the hearing. He argued that she should be barred from presenting new evidence. He also argued that the trial court correctly determined that maintenance should not be awarded.

¶ 15 The trial court entered a written order on the motion to reconsider. First, the court stated that it did not consider the new evidence attached to Amy's motion to reconsider. The court made detailed findings as to the statutory factors used to determine whether maintenance is appropriate. As to Amy's income, the court then went on to find:

> "The Court has considered the tax returns and statements previously admitted in exhibit Y, the financial affidavit, the testimony of the parties and the testimony of Nicole Miller. According to the 2016 and 2017 tax returns specifically, and the tax return history report contained therein, the Court can see that the petitioner's net business income was $32,021 in 2016 and $26,767 in 2017. Pursuant to the testimony offered, the taxes would show the income made by the wife except for the cash received. According to the affidavit her gross income for 2018 was $55,530.00 (which includes $7,000 cash). The Court finds her ordinary and necessary business expenses to be 23,012.40 for a net total of $32,517 in 2018. The Court understands that because she does not include her cash

income in the tax returns that even this source of evidence is dependent on the Court's determination of the wife's credibility during her testimony regarding the fact that her cash income doesn't vastly fluctuate from year to year.

The Court must next consider how to compute the cash received by the wife. She has been consistent in her testimony that she earned about $7,000 in cash in 2018. She tallied this amount by keeping notes throughout the year. Sadly, the Court has very little in the way of documentation regarding the exact amount of cash income for 2018. The couple knowingly engaged in the practice of filing returns in the past without declaring this income. From the evidence in this case, it is obvious that the husband knew about this practice and benefitted from it. The Court does not condone such behavior yet is bound to evaluate the evidence that was presented to determine the amount of cash earned even without the clarity the tax returns would have provided if filed correctly. The Court did find the wife's testimony credible regarding the amount of cash earned. She certainly did not try to hide this issue from the Court and seemed to be very meticulous in her recitation of her financial situation. In addition, since he knew that she kept the cash separate from her bank account and that they used it continuously during the marriage for expenses, he had the ability to testify regarding how this money was

used throughout the marriage and whether from his knowledge the $7,000 figure was accurate.

In contrast, the Court finds the testimony of Ms. Miller to be speculative and of little value to the Court. During cross examination, she admitted she either did not know about or consider some deposits made that were not from the wife's employment. She admitted in cross that knowing the source of many of these deposits would have changed her analysis. Further, the simplistic approach she took to trying to calculate the cash received by the expenses in the affidavit was speculative. She also admitted in her testimony that her analysis is dependent on whether she had the necessary documents.

Therefore, considering all the evidence presented and judging the credibility of the witnesses, the Court does not find that the wife's income fluctuated to the extent necessary to average her income. Further, the Court calculates the wife's income as $55,530-23,012.40 in expenses for a net income of $32,517."

¶ 16        After reconsidering the factors, the court found that a maintenance award was proper. The court determined that it would use Amy's individualized tax amount rather than the standardized amount to calculate her net income. The court made this determination based on Amy's status as a self-employed individual. In awarding maintenance, the court noted: "[Chance] does have an obligation to pay child support from another relationship, so the guidelines do not apply, however,

the Court does consider the amount and duration that would have been ordered if they did apply. Considering all that is required the Court orders maintenance of $899.58 for 5 years[.]"

¶ 17    Chance appeals.

¶ 18                                II. ANALYSIS

¶ 19    Chance contends the trial court erred in: (1) awarding Amy maintenance; (2) calculating Amy's income; (3) considering Amy's motion to reconsider; (4) using the guidelines to determine the amount of maintenance; and (5) applying Amy's individualized taxable income to determine the maintenance amount.

¶ 20                               A. Maintenance

¶ 21    First, Chance contends the trial court erred in awarding maintenance in favor of Amy. A trial court's award of maintenance is generally presumed to be correct. *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 26. A maintenance award is a matter within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Id.* A trial court abuses its discretion when its decision is arbitrary, fanciful, or unreasonable or where no reasonable person would agree with its determination. *Seymour v. Collins*, 2015 IL 118432, ¶ 41. The trial court's factual findings regarding maintenance, such as the determination of a party's income, will be set aside only if the findings are against the manifest weight of the evidence. *Brill*, 2017 IL App (2d) 160604, ¶ 30; *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 153 (2005). A finding of fact is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the finding is unreasonable, arbitrary, or not based on the evidence. *Brill*, 2017 IL App (2d) 160604, ¶ 30.

¶ 22    An award of maintenance in a dissolution proceeding is governed by section 504 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504 (West 2018)). The trial

court "may grant a maintenance award for either spouse in amounts and for periods of time as the court deems just \*\*\*." *Id.* § 504(a). Section 504(a) of the Act sets forth a list of factors for the trial court to consider, where relevant, in determining whether a maintenance award is appropriate. *Id.* § 504(a)(1-14). The factors include: (1) the income and property of each party, including the marital property apportioned and the nonmarital property assigned to the party seeking maintenance; (2) the parties' needs; (3) the parties' realistic present and future earning capacity; (4) any impairment of the realistic present and future earning capacity of the party seeking maintenance due to that party's devotion of time to domestic duties or having forgone or delayed education or training, employment, or career opportunities due to the marriage; (5) any impairment of the realistic present or future earning capacity of the party against whom maintenance is sought; (6) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment; (7) the standard of living established during the marriage; (8) the duration of the marriage; (9) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and the needs of each party; (10) all sources of public and private income, including, without limitation, disability and retirement income; (11) the tax consequences to each party; (12) the contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse; (13) any valid agreement of the parties; and (14) any other factor that the trial court expressly finds just and equitable. *Id.*

¶ 23        Here, the trial court provided a detailed written decision concerning its findings as they related to the section 504(a) factors. The parties were married in 2006. The court found that Amy's net income amounted to $32,517. By contrast, Chance presented evidence that his net income was

approximately $70,000. The court noted that Chance's employment remained stable and offered pension benefits. On the other hand, Amy was self-employed and did not have the same job security that Chance enjoyed. Following the divorce, Amy absorbed new expenses that Chance previously paid. As a result, she could no longer contribute to her retirement accounts. Amy also had to obtain her own health insurance after the divorce. The court also noted that Chance was aware of Amy's failure to report the cash on their taxes and could have presented evidence as to his knowledge of the actual amount. Based on these findings, we conclude that the record supports the trial court's decision to award maintenance to Amy.

¶ 24                               B. Calculating Amy's Income

¶ 25       Second, Chance contends that the trial court erred in calculating Amy's income. Chance contends that the trial court failed to consider Amy's unreported cash income. According to Chance, the court should have accepted Miller's financial analysis, which calculated Amy's gross income by averaging the total deposits and speculating as to the amount of unreported cash Amy earned.

¶ 26       In calculating Amy's income, the trial court used the monthly gross income listed on Amy's financial affidavit. The court found that Amy's gross income amounted to $55,530. This number included the $7000 in cash Amy received from clients that went unreported on her tax returns. The court then deducted Amy's business expenses, which amounted to $23,012.40. We find the trial court did not abuse its discretion in determining Amy's net income to be $32,517.

¶ 27       In reaching this conclusion, we reject Chance's argument that the trial court should have accepted Miller's testimony that Amy's cash income was greater than she reported. In this case, Amy testified that she earned $7000 in unreported cash. Miller, by contrast, assumed Amy earned between $12,000 and $13,000 in unreported cash. Miller's calculated this amount based on Amy's

financial affidavit, which stated that Amy spent about $200 for gas, $200 for meals, and $600 for groceries per month. Because Miller could not find bank statements showing these purchases, Miller assumed the money came from unreported cash Amy earned.

¶ 28    The trial court did not find Miller's testimony credible. We agree with the trial court. Miller's analysis blindly accepted every deposit made by Amy as income. As the court correctly noted, Miller's analysis is speculative. In fact, Miller testified that her analysis would change if she had more supporting documentation. Amy testified that while she spent cash, she would also use a credit card. Amy paid off the credit card with funds from her bank account. The credit card statements were not presented at trial. It is possible that Amy paid for these expenses with both her credit card and cash. Further, the court found Amy's testimony as to the amount of cash she received to be credible. Chance essentially requests this court to reweigh the evidence. Because the trial court is in a far better position than the appellate court to determine the credibility of the witnesses and the weight to be afforded conflicting testimony (see *In re Marriage of Eltrevoog*, 92 Ill. 2d 66, 71 (1982)), this court will not reconsider the evidence or reassess the witnesses' credibility or demeanor. (See *Horace Mann Insurance Co. v. Brown*, 236 Ill. App. 3d 456, 465 (1992)).

¶ 29    Moreover, Chance's contention that the trial court implicitly rejected the "*Kuper* expense rule" as laid out in *In re Marriage of Kuper*, 2019 IL App (3d) 180094, is without merit. In *Kuper*, the court did not assert a bright line rule proclaiming error when a court declines to approximate income as function of expenses. Instead, the *Kuper* court simply found that the trial court in that case did not abuse its discretion when it did so. *Id.* ¶ 25. Consequently, we find that the court did not abuse its discretion in calculating Amy's income.

¶ 30                    C. Motion to Reconsider

- 11 -

¶ 31    Third, Chance argues that the trial court erred in granting Amy's motion to reconsider because the motion relied upon evidence available but not presented at the time of trial. We disagree.

¶ 32    The purpose of a motion to reconsider is to bring to the trial court's attention newly discovered evidence, changes in the law, or errors in the previous application of the law. *Nissan Motor Acceptance Corp. v. Abbas Holding I, Inc.*, 2012 IL App (1st) 111296, ¶ 16. Generally, a trial court's decision to grant or deny a motion to reconsider is reviewed for an abuse of discretion. *Id.*

¶ 33    Here, the trial court explicitly stated that it did not consider the new evidence provided by Amy. The court, however, did determine that it erred in its calculation of Amy's income. Following the hearing on the motion to reconsider, the court found it appropriate to consider Amy's net income as opposed to her gross. The court also took a different approach to calculating Amy's gross income after finding Miller's testimony speculative. We find the court did not abuse its discretion in granting Amy's motion to reconsider.

¶ 34                        D. Amount of Maintenance

¶ 35    Fourth, Chance contends that the court abused its discretion in setting the amount of maintenance at $899.58 per month for five years. Chance contends that the court improperly relied on the guidelines in section 504(b-1)(1) of the Act (750 ILCS 5/504(b-1)(1) (West 2018)). Section 504(b-1) of the Act expressly states that the guidelines do not apply where the payor spouse has a previous child support obligation. See *id.* § 504(b-1). In cases like this where the guidelines do not apply, the court is directed to consider the factors in section 504(a) to determine the maintenance amount. *Id.*

¶ 36    Here, the trial court acknowledged that the guidelines did not apply. The court, however, used the guidelines as an aid in its determination. Even when the guidelines are not applicable, an award of maintenance that is consistent with the guideline amount will typically be a proper exercise of the court's discretion. See *In re Marriage of Harms*, 2018 IL App (5th) 160472, ¶ 36 (citing *In re Marriage of Johnson*, 2016 IL App (5th) 140479, ¶¶ 108, 110). The trial court considered the relevant factors in section 504(a) as required. After consideration of those factors, the court determined that an amount consistent with the guideline amount of maintenance was appropriate. We conclude the trial court did not abuse its discretion.

¶ 37    In reaching this conclusion, we reject Chance's reliance on *In re Marriage of Kuper*, 2019 IL App (3d) 180094, to contend that the proper remedy would be to remand for the trial court to recalculate the maintenance amount without reference to the guidelines. *Kuper* is distinguishable. In *Kuper*, the trial court believed that the guidelines applied and used the guidelines to determine the maintenance amount. *Id.* ¶ 28. Here, by contrast, the trial court knew that the guidelines did not apply and, after considering the factors in section 504(a), exercised its discretion to use the guidelines as an aid when determining the maintenance amount. See 750 ILCS 5/504(a)(14) (West 2018). Remand for the trial court to once again consider the factors in section 504(a) is unnecessary.

¶ 38                            E. Individual Tax Amount

¶ 39    Finally, Chance contends that the trial court erred in relying on Amy's individual tax amount to determine the maintenance award. In a guidelines case, a trial court uses an individual's net income to calculate the maintenance award. See 750 ILCS 5/504(b-1)(1)(A) (West 2018); *id.* § 504 (b-3.5). In determining the individual's net income, the court may subtract an individual tax amount or a standard tax amount from the individual's gross income. See *id.* § 505(a)(3)(B). In a

- 13 -

nonguideline case, the court considers the "income" of a party under section 504(a). *Id.* § 504(a)(1). "Income" is not defined in section 504(a). As the guidelines do not apply, Chance contends that the trial court erred in utilizing the individual tax amount because section 504(a) does not define income. In other words, the concept of net income as used in a guidelines case does not apply in the present case and the court only should have considered Amy's "income." We disagree. The lack of a definition of "income" in section 504(a) provides the trial court with discretion to determine how to calculate an individual's income. This approach comports with the considerations laid out in the enumerated factors. Specifically, the final factor directing the court to consider "any other factor that the trial court expressly finds just and equitable." *Id.* § 504(a)(14). Amy is self-employed. Calculating her income under the individual tax amount is proper where business expenses must be considered in determining her net income. Further, as noted above (*supra* ¶ 36), it is within the trial court's discretion to use the guidelines as an aid in a nonguideline case to assist the court in determining the maintenance award.

¶ 40        In closing, we note that Chance fails to explain how he was prejudiced by the court's use of Amy's individual tax amount in awarding maintenance. Nor does he explain how the court should have determined Amy's income and how that would have affected the ultimate maintenance award. In fact, Chance only contends that it is unclear if the court should have considered whether to use Amy's individual tax amount or a standard tax amount. This court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented, and it is not a repository into which an appellant may foist the burden of argument and research. *Stenstrom Petroleum Services Group, Inc. v. Mesch*, 375 Ill. App. 3d 1077, 1098 (2007).

¶ 41                                    III. CONCLUSION

¶ 42        For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

¶ 43        Affirmed.